### AMERICAN BRIDGE COMPANY *v.* HEIDELBACH.

1. A company, to secure the payment of its bonds, mortgaged its property, and the rents, issues, and profits arising therefrom, with the provision, that, if there was default in paying the interest, the mortgagee might take possession of the property, manage the same, and receive and collect all rents and claims due and to become due to the company.    Default was made; and the mortgagee, in November, 1874, filed his bill, setting forth that the company had on hand moneys and claims due to it, both of which he prayed might be applied to his mortgage.    An execution upon a judgment, which B. had against the mortgagor, having been sued out and returned *nulla bona*, he, in December of that year, filed his bill to subject such moneys and claims to the payment of his judgment.    *Held*, that, inasmuch as the mortgagee had not taken possession, his claim to the earnings and income on hand at the time of filing his bill must be postponed to that of B.

2. *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459, and *Gilman et al.* v. *Illinois & Missouri Telegraph Co.*, 91 U. S. 603, cited and approved.

APPEAL from the Circuit Court of the United States for the District of Kansas.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Mr. Wallace Pratt* and *Mr. C. B. Lawrence* for the appellant, and by *Mr. R. Crozier, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

The controversy in this case has arisen out of a mortgage executed by the Kansas and Missouri Bridge Company to the appellees, as trustees, to secure the payment of the principal and interest of certain bonds issued by the mortgagor and described in the mortgage.

Besides the bridge of the company, the mortgage included "the rents, issues, and profits of said bridge, as far as the same are not required to pay the necessary expenses of keeping in repair and operating said bridge, which rents, issues, and profits," it was declared, "are hereby pledged to the payment of said interest as it matures, and to the establishment of a sinking fund for the redemption and payment of the principal of said bonds," &c. It was further provided, that, if the interest were in default for six months, the trustees, upon the written request of the holders of one-half of the outstanding bonds, might take possession of the mortgaged premises, manage and operate the bridge, and receive and collect all rents and claims due and to become due to the company.

The interest upon the bonds being in default, the trustees, on the 25th of November, 1874, filed their bill, wherein, among other things, they set forth that there was in the hands of the company a certain amount of money which ought to be applied upon the mortgage and certain claims due to the company, the proceeds of which ought to be applied in like manner. The bill prayed accordingly.

The appellant, the American Bridge Company, held a judgment for $15,435.88 and costs against the Kansas and Missouri Bridge Company, upon which an execution had been returned *nulla bona.* On the 11th of December, 1874, the judgment creditor filed a bill claiming priority of payment out of the money and the proceeds of the claim above mentioned. It

appears that there is a sufficient fund to meet the demand awaiting below the termination of this litigation.

It cannot be denied that the return of the execution, the filing of the bill, and the service of process, gave the judgment creditor a lien upon the fund in question which must prevail, unless the mortgagees have shown a paramount right to it. *Miller* v. *Sherry*, 2 Wall. 249 ; 2 Barb. Ch. Pr. (2d ed.) 157, note 13.   The question as to the right claimed by the trustees is conclusively settled against them by *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459, and *Gilman et al.* v. *Illinois & Missouri Telegraph Co.*, 91 U. S. 603.

Both these cases, as regards this point, present exactly the same legal aspect as the case before us.   It is unnecessary to reproduce at length what was said in those adjudications.

In this case, upon the default which occurred, the mortgagees had the option to take personal possession of the mortgaged premises, or to file a bill, have a receiver appointed, and possession delivered to him.   In either case, the income would thereafter have been theirs.   Until one or the other was done, the mortgagor, as Lord Mansfield said in *Chinnery* v. *Black*, 3 Doug. 391, was " owner to all the world, and entitled to all the profit made."

The mortgage could have no retrospective effect as to previous income and earnings.   The bill of the trustees does not affect the rights of the parties.   It is an attempt to extend the mortgage to what it cannot be made to reach.   Such a proceeding does not create any new right.   It can only enforce those which exist already.   The bill of the trustees is as ineffectual as if the fund were any other property, real, personal, or mixed, acquired by the mortgagee *aliunde*, and never within the scope of the mortgage.

*Decree reversed, and cause remanded with directions to enter a decree in conformity to this opinion.*