CHARLES A. DE GRAFF and another *vs.* HORACE THOMPSON and others, Garnishees.

April 1, 1878.

**Garnishment—Garnishee in Possession of Money which he has No Right to Retain.**—A party who obtains possession of a definite sum of money belonging to another, which he has no right in justice or equity to retain, may be garnished as his debtor for such sum by a creditor of the latter.

**Same—Railroad Mortgage—Company Entitled to Income while in Possession— Such Income can be Garnished when Mortgagee takes Possession Thereof without Consent of Company.**—By the terms of each of three mortgages given by the defendant company upon its railroad land and franchises, the tolls, incomes, rents, issues and profits were included as part of the mortgaged property. It was also stipulated in each that "all the current net earnings and incomes of said railroad, after deducting current expenses and paying interest on certain bonds secured by prior liens, should be appropriated and used from time to time, if necessary, in the payment of the interest on the bonds secured by such mortgage;" that on default in the payment of interest for the period of six months, the mortgagees or trustees might "enter into possession of the road and mortgaged property, and collect and receive all incomes, tolls, profits, rents, issues and profits of the same, and operate the road for the benefit of the bondholders;" but it was also provided "that until default in the payment of the principal or interest of the bonds thereby secured, the mortgagor company should be permitted to possess, manage

and operate the road, and take and use the rents, incomes, profits, tolls, and issues thereof in the same manner and with the same effect as if the mortgage deed had never been made." *Held,* the income of the road acquired by the company during the continuance of its possession and operation of the same belonged to the company as its property, and if the mortgagees took possession of such income without the consent of the company, the same could be reached by garnishee process in favor of the company's creditors.

Plaintiffs brought this action in the district court for Ramsey county against the First Division of the St. Paul & Pacific Railroad Company, and summoned as garnishees Horace Thompson, Edmund Rice and J. S. Kennedy, the mortgage trustees of the defendant's road. Thompson and Rice appeared and disclosed; but no service was had upon Kennedy, who was a non-resident, and did not at any time appear in the proceedings. It appeared from the disclosures that the garnishees took possession of the road as mortgage trustees, October 9, 1876, and that the company had on hand at that time, as prior earnings of the road, $157,618.04, of which $42,618.04 were in the hands of the treasurer of the company at St. Paul, and $115,000 were in the hands of the assistant treasurer in New York city. The court, *Simons, J.,* presiding, ordered that judgment be entered against the garnishees, so far only as the same might be enforced against the joint property of all, and the separate property of Thompson and Rice, for the sum of $18,186.34. From this order the garnishees appealed to this court.

*George L. & C. E. Otis,* for appellants.

*Gilman, Clough & Lane,* for respondents.

CORNELL, J. Assuming that appellants, at the time they took possession of the road and franchises under the mortgages, had no legal right as mortgagees to take and appropriate any portion of the previously acquired earnings and income of the road then on hand without the consent or authority of the company, their liability as garnishees, in respect to the $42,-618.04, would seem to follow from the facts indisputably evidenced by the disclosures; and if their liability exists to

this extent, there is no occasion to consider any of the questions raised and discussed in respect to the $115,000 claim, inasmuch as the sum thus subjected to garnishment is more than sufficient to satisfy and discharge the judgment of plaintiffs. Under the statute the right of garnishment is given to a contract creditor whenever it is properly made to appear that the garnishee is indebted to the debtor of the former, or has property, money or effects in his hands, or under his control, belonging to such debtor, exceeding in amount and value the sum fixed by statute.	Gen. St. c. 66, tit.	10, § 147.

Were appellants debtors of the defendant company, within the meaning of this statute, in respect to this sum of $42,618.04, at the time of the garnishment? The facts established by the disclosure, beyond any reasonable doubt, are that the appellants, as mortgage trustees, under three several mortgages, and solely by virtue of their authority thereunder, first took possession of the defendant company's railroad property, and the franchises therewith connected, on the ninth day of October, 1876, and thereafter operated and used the same as such trustees. At this time the company was, as it had theretofore been, in the actual possession and enjoyment of its said railroad and property, as the lawful owner, with J. P. Farley as its general manager, and J. Botsford as its treasurer; and there then remained in account upon the books of the company, which were then balanced, of unexpended income and earnings theretofore acquired, a balance of $42,618.04, which then belonged to the company and was in the hands of its said treasurer. When the trustees thus took possession, the said Farley thereupon became and thereafter continued to be the general manager of the trustees, and the said Botsford also became and continued their treasurer, and all their subsequent acts in reference to the company's funds then in the possession of its treasurer, and in respect to all moneys afterwards earned in operating the road, were done solely under the direction and authority of said trustees; and as their officer, acting solely as treasurer for said trustees,

and by their order and that of their general manager, and
without any direction or authority whatever from the company
or any of its officers, the said Botsford, immediately upon
the said trustees taking possession, turned over to them said
moneys so in his hands belonging to the company, by trans-
ferring the same to the new account, which he as their treas-
urer then opened and afterwards kept, and which contained
full entry of all their receipts and disbursements as trustees
in connection with said road. The only ground upon which
the trustees made any claim to the transfer of this money
was their supposed legal right thereto as trustees, under the
stipulations contained in the mortgages. This sum so trans-
ferred to the account of the trustees, together with the subse-
quently acquired earnings of the road, constituted a common
fund from which the current expenses incurred by them in
operating the road were paid, under their directions. There
was also paid from this fund, under like directions, after the
trustees so took possession of the road, and before the gar-
nishment in question, certain debts contracted by the company
in operating the road prior to October 9, 1876, in the aggregate
equal to, if not exceeding, the said sum of $42,618.04; but
these debts were assumed and paid voluntarily by the said
trustees and their treasurer, without any authority or direction
whatever from the company or any of its officers. Of this
general fund there was in the hands of the treasurer of the
trustees a balance, on the eighteenth day of November, 1876,
of $18,996.17, and on the twenty-second day of November,
1876, of $30,242.01. The garnishee summons was served
on Rice and Thompson, November 20, 1876, at which time it
does not definitely appear what balance remained, nor is it at
all important, in the view of the case taken by the court.
Upon these facts, leaving out of sight for the present the
voluntary payments of the debts of the company by the
trustees, and their effect, if any, upon the latter's liability, it
is clear, if the trustees had no rightful claim upon the money
in question, under the mortgages, that they had no legal or

equitable right to retain or use it for any purpose. Having acquired it through a mistake as to their legal rights, and having no right conscientiously to retain it, a cause of action at once accrued against them, in favor of the corporation defendant, for its amount, as for money had and received. Though there was no privity of contract between them founded upon any express agreement, there was a definite sum of money due from them to the defendant, *ex æquo et bono*, from which the law implies the privity and promise essential to the maintenance of the action. Whenever one receives money which is the property of another, and which he is bound in natural justice and equity to refund to the rightful owner, an indebtedness arises in favor of the latter against the wrongful holder, upon which an action lies to recover the amount. *Mason* v. *Waite*, 17 Mass. 560; *Hall* v. *Marston*, 17 Mass. 579; *Eagle Bank* v. *Smith*, 5 Conn. 71; *Bayne* v. *United States*, 3 Otto. 643; *United States* v. *State National Bank of Boston* and *Merchants' Bank* v. *United States*, 6 Otto. 30, 36.

Being thus indebted to the defendant in respect to this money, they could not discharge their obligation to pay it by voluntarily assuming the payment of debts of like amount due to others from the corporation without its assent. No debtor can thus discharge his obligations to his creditor.

This money or debt, then, was the subject of garnishment in favor of the plaintiffs as judgment creditors of the defendant company, unless the trustees had the legal right to take and hold the money by virtue of some lien thereon created by the mortgages. These mortgages are all alike in their provisions. Each covers the road and franchises, and also in terms includes "the tolls, incomes, rents, issues, and profits," as part of the mortgaged property. By the first article of each it is provided that, until default in the payment of the principal or interest of the bonds secured thereby, the company shall be suffered and permitted "to possess, manage, and operate the road, and to take and use the rents, incomes, profits, tolls,

and issues thereof in the same manner, and with the same effect, as if the mortgage deed had never been made."

By the ninth article it is provided that, in case of default in the payment of interest for the period of six months, "the trustees may enter into the possession of the said railroad and mortgaged property, and collect and receive all tolls, freights, incomes, rents, issues, profits of the same, and operate the road for the benefit of the bondholders." By article second it is further stipulated, among other things, "that all the current net earnings and income of the said railroads, after deducting current expenses, and after paying the interest on the bonds secured by the prior liens above mentioned, shall be appropriated and used, from time to time, if necessary, in the payment of the interest on the bonds secured by this instrument." With the exception of this last recited stipulation, it is conceded that the mortgages in question, in all their essential provisions and conditions, are substantially like those passed upon by the supreme court of the United States in *Galveston R. Co.* v. *Cowdrey,* 11 Wall. 459; *Gilman* v. *Illinois & Mississippi Telegraph Co.* 1 Otto, 603; and *American Bridge Co.* v. *Heidelbach,* 4 Otto, 798. In each of these cases it was held that the mortgage did not attach or become a lien upon any portion of the earnings or income of the road accruing while the mortgagor continued in its possession, control, and management, and that the mortgagees acquired no lien or right upon any portion of the income accruing prior to the time of their taking possession of the road, either personally or through the intervention of the court, by a receiver, in the exercise of their option after default. The principle of these decisions is this: that whenever, by the terms of a mortgage upon this kind of property, either expressly or by implication, the right is reserved to a company mortgagor, who is general owner, to retain the possession and use of the mortgaged property, by operating the road, receiving the earnings, and applying them in its discretion towards defraying the operating expenses, such mortgagor

must be regarded as the owner of all such earnings acquired during the continuance of its possession, and as invested with the absolute right of disposal as fully as any general owner of property enjoys. This right is wholly inconsistent with the existence of any specific lien under the mortgage in favor of the mortgage trustees. The principle, as applied to this class of mortgages, we deem eminently wise and beneficial, and the case now before us falls clearly within it.

The objection made by appellants' counsel that the hereinbefore quoted stipulation from the second article of the mortgages now under consideration, in reference to the appropriation and use, if necessary, of the net earnings to the payment of the interest on the bonds, so far distinguishes the present case from those decided by the federal court, as to take it out of the operation of the principle of those decisions, is not in our judgment tenable. His claim is that the net earnings therein mentioned refer to all the net earnings of the road, including both those earned prior and after the trustees took possession, and that the effect of the clause was to specifically appropriate them in advance to the purpose indicated. It seems to us that this provision differs in no essential particular from that considered in the case cited from 4 Otto, *supra.* There the mortgage, in terms, included "the rents, issues, and profits of said bridge, as far as the same were not required to pay the necessary expenses of keeping in repair and operating the bridge;" and it expressly declared that "said rents, issues and profits" (that is, the net profits,) "were thereby pledged to the payment of interest as it matured, and to the establishment of a sinking fund for the redemption of the principal of said bonds," etc. Clearly this language as fully and specifically pledges and appropriates the net earnings to the purpose named, as does that used in the instruments now under consideration, and is equally as broad in its application. Besides, conceding the correctness of counsel's proposition in respect to this stipulation and its effect, it is difficult to see how his clients can avail themselves of its benefits upon

the disclosure made. It is not claimed that the provision refers to anything but net profits. The disclosure shows that the unpaid current expenses incurred by the company in operating the road prior to the time the trustees took possession, exceeded this balance of $42,618.04 of income which then remained in the company's hands, and one branch of the appellant's defence against the garnishment herein is that they have paid such expenses, so necessarily incurred, to an amount exceeding the balance of income received by them from the company. In view of these facts, it is apparent there was no net income to which this stipulation could apply. The order for judgment was providently granted, and must be affirmed.

Gilfillan, C. J., having been of counsel, did not sit in this case.