New York Security and Trust Company, Respondent, *v.* Saratoga Gas and Electric Light Company et al., Defendants.

Edward Winslow Paige et al., Appellants.

1. Corporations — Corporate Mortgage — Future Earnings and Products. Where a mortgage of all its property, including its plant, made by a corporation to secure the payment of the principal and interest of its bonds, in terms purports to include future earnings and products, and provides that until default the mortgagor shall have the use of the earnings in the conduct of its business, and that upon default the mortgage trustee may go into possession, exercise the corporate franchises and appropriate the earnings to the payment of the mortgage debt, the mortgage does not, as against general creditors of the corporation, operate as a lien upon earnings until actual entry and possession under it.

2. Right to Earnings of Corporation as between Creditors and Bondholders. As between the general creditors of the corporation and its bondholders under such a mortgage purporting to include future earnings and products, the right or lien of the bondholders is properly limited to the earnings of the corporate business, in the sale of its products, after the mortgage trustee or a receiver in foreclosure has actually taken possession; and the earnings prior to that time belong in equity to the general creditors.

3. Right to Earnings of Corporation as between Sequestration and Foreclosure Receivers. As between a receiver appointed in a sequestration action instituted by a general judgment creditor of the corporation, and a receiver appointed at the same time in an action for the foreclosure of such a mortgage purporting to include future earnings and products, the sequestration receiver has the superior right in debts and accounts due to the corporation upon sales by it of products of its plant, produced after the giving of the mortgage and before the appointment of either receiver.

*N. Y. Sec. & Trust Co.* v. *S. G. & El. L. Co.*, 30 App. Div. 89, reversed.

(Argued April 17, 1899; decided May 2, 1899.)

18

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, made May 4, 1898, reversing that part of an order of a Special Term which allowed and approved the payment by the mortgage receiver, Lafayette B. Gleason, to Edward Winslow Paige, attorney for the sequestration receiver, William V. Reynolds, of the sum of $4,770.22, and overruled the exceptions of the plaintiff to such payment; and also from an order made May 4, 1898, reversing an order which denied the plaintiff's motion for an order directing Mr. Paige to pay to the plaintiff $4,770.22, and granting the plaintiff's motion for repayment to it by Mr. Paige of the sum of $3,564.04.

The nature of the action, the facts, so far as material, and the question certified for review are stated in the opinion.

*Edward Winslow Paige* for appellants. The mortgage gave to the mortgagee no interest in any debts accruing to the mortgagor before the mortgagee took possession. (Jones on Corporate Bonds, § 80; *G. R. R. Co.* v. *Cowdry,* 11 Wall. 459; *Gilman* v. *I. & M. T. Co.,* 91 U. S. 603; 2 Kent's Comm. 172; *Chinnery* v. *Black,* 3 Doug. 391; *City of Bath* v. *Miller,* 51 Me. 341; *Noyes* v. *Rich,* 52 Me. 115; *A. B. Co.* v. *Heidelbach,* 94 U. S. 798; *U. S. T. Co.* v. *W. R. Co.,* 150 U. S. 287; *Teal* v. *Walker,* 111 U. S. 242; *Dow* v. *M. R. R. Co.,* 124 U. S. 652; *Sage* v. *M., etc., R. R. Co.,* 125 U. S. 361.) The appointment of a sequestration receiver is equivalent to there being a creditor with judgment, execution and creditor's bill. (*U. S. T. Co.* v. *N. Y., W. S. & B. R. Co.,* 101 N. Y. 478; *Reynolds* v. *Ellis,* 103 N. Y. 115; *Matter of C. J. Co.,* 128 N. Y. 550; *Matter of S. S. T. B. Co.,* 126 N. Y. 169; *Edwards* v. *Edwards,* L. R. [2 Ch. Div.] 291.)

*Howard A. Taylor* for respondent. The lien of the mortgage fastened, in behalf of the bondholders, upon the indebtedness the moment it became due the light company, or, certainly, as soon as the default of August first occurred. It, therefore, antedated any possible lien which the sequestration

receiver could have. (*Payne* v. *Wilson*, 74 N. Y. 348; 3 Pom. Eq. Juris. § 1235; *Wisner* v. *Ocumpaugh*, 71 N. Y. 113; *Kribbs* v. *Alford*, 120 N. Y. 519; *Williams* v. *Inger-soll*, 89 N. Y. 508; *Hayes* v. *Dickenson*, 9 Hun, 277; *U. S. T. Co.* v. *N. Y., W. S. & B. R. Co.*, 101 N. Y. 478; *Stevens* v. *Watson*, 4 Abb. Ct. App. Dec. 302; *Carpenter* v. *B. H. G. M. Co.*, 65 N. Y. 43; *Seymour* v. *C. & N. F. R. R. Co.*, 25 Barb. 284; *Matter of Howe*, 1 Paige, 125.) Income, rents and profits of mortgaged property not actually paid to and received by the mortgagor in cash, prior to the mortgage receivership, are to be applied on the mortgage debt, although they became due prior to the receivership. (*Davidson* v. *W. G. L. Co.*, 99 N. Y. 558; *Wyckoff* v. *Scofield*, 98 N. Y. 475; *Rider* v. *Bagley*, 84 N. Y. 461; *Hollenbeck* v. *Donnell*, 94 N. Y. 342; *Lofsky* v. *Maujer*, 3 Sandf. Ch. 69; *Howell* v. *Ripley*, 10 Paige, 43; *Raht* v. *Attrill*, 106 N. Y. 423; Code Civ. Pro. § 1810.)

O'Brien, J. The questions raised by this appeal arise upon a controversy between the receiver in an action to foreclose a corporate mortgage, given to secure bondholders, and a receiver appointed at the same time, in a suit by a general creditor of the corporation, brought for the purpose of sequestrating the assets of the corporation after a judgment upon the claim and an execution returned unsatisfied. While both receivers were appointed at the same instant of time, the sequestration action was commenced before the foreclosure action and before the appointment of the receiver therein.

On the first day of February, 1887, the Saratoga Gas & Electric Light Company, a domestic corporation, executed and delivered to the American Loan & Trust Company a mort-gage to secure its bonds, amounting in the aggregate to three hundred thousand dollars, due in 1907. The bonds so issued had interest coupons attached, payable semi-annually, at the rate of six per cent. The property covered by the mortgage is described therein as follows: " All the corporate property, real, personal and mixed, including all lands, easements, rights

of way, buildings, fixtures, materials, supplies, machinery and plant, franchises, contracts and choses in action, whether now owned or hereafter acquired or constructed by said gas company, together with the appurtenances thereto, and all rents, tolls, issues, income and profits of said gas company, present and future, to have and to hold the same unto said American Loan and Trust Company, its successors and assigns forever, upon trust for the equal benefit and security of all holders of said bonds, and subject to the following covenants, conditions and provisions which are assented to by both parties, to wit," etc. It must, I think, be admitted that this language is broad enough to cover not only all the property that the corporation then had, but all that it ever could have by any possibility, whether lands, chattels, moneys or things in action.    But the language here used, broad and comprehensive as it is, is very much qualified and restricted by other provisions of the instrument, as will be seen by reference to the following stipulations: I. "Until default occurs in some duty, or upon some covenant, agreement or promise of the gas company hereunder, said gas company, its successors and assigns shall retain the possession, control and enjoyment of all the property and franchises hereby mortgaged, and may receive and use the earnings, income and profits thereof in any manner not inconsistent with these presents, nor tending to lessen the security hereby provided."    II. "The said gas company, for itself and its successors, covenants to pay to the several holders of the bonds hereby secured, the principal and interest of said bonds, according to the tenor and true intent of said bonds and the coupons thereto attached."    V. "But if default be made in any payment of principal or interest upon said bonds when due, or in the performance of any covenant or agreement on the part of the said gas company herein contained, and if such default shall continue for the period of sixty days, then, and in either of said cases, the trustee may enter into and upon and take possession, management and control of all the property and franchises covered by these presents, and may operate the same, and continue the business, and exercise the franchises

of said gas company, making all needful repairs, alterations and additions, and may collect and receive all earnings and income thereof." VII. "If any default shall occur or continue as in article five specified (that is, 'continue for the period of sixty days'), the trustee may, and upon the written request of the holder or holders of one-fourth or more of said bonds then outstanding, accompanied by indemnity as hereinafter provided, shall, with or without entry as aforesaid, proceed to foreclose this mortgage either by advertisement or sale according to law, or by proper judicial proceedings."

These several provisions of the instrument must obviously be read together in order to ascertain the real intention of the parties and the true construction which should be placed upon the agreement. Notwithstanding the broad general language used in the description of the property mortgaged it is plain that the mortgagor was to have, at least until default, the possession and enjoyment of all the property, whether existing at the time or acquired in the future, and was to use the future earnings for the purpose of conducting the business for which the corporation was organized. This must mean that it had a right to sell and transfer the future products of its operations as its own, free and clear from any lien of the mortgagee. The intention was that it should purchase materials for its business, employ labor, contract debts and discharge all obligations arising therefrom by the use of the products of the business or the earnings of the plant.

In this condition of things the corporation made default in the payment of the interest coupons due on the first of August, 1893, and on November 11th following the plaintiff, as substituted trustee, brought an action to foreclose the mortgage, and a receiver was appointed on the 16th of November, following, and on the same day, and at the same time, the sequestration creditor procured the appointment of a receiver in his action. The receiver in the foreclosure action took possession of the gas plant and proceeded to operate the works and to make and sell manufactured gas and electricity. At that time there were moneys in the office of the company and to

its credit on deposit in banks, and due to it on open accounts for gas and electricity manufactured before, and it owed various debts for materials which it had purchased in conducting its business. There came to the hands of the receiver in the foreclosure action from the moneys on hand, prior to the commencement of the action, and from the earnings of the corporation prior to that date and after the execution of the mortgage, in the form of open accounts or notes, the sum of over four thousand dollars, which the receiver in the sequestration action, representing general creditors, claims should be paid to him for distribution among such creditors. In other words, the question is, whether the earnings of the corporation from its business, in the sale of its products, prior to the time of the commencement of the action to foreclose the mortgage and the date of the possession by the receiver in that action, belong in equity to the bondholders or to the general creditors? The Special Term held that the general creditors of the corporation had the prior equitable right to the fund, but the orders of that court were reversed by the Appellate Division, which held that the fund in equity belonged to the receiver appointed in the foreclosure action for the benefit of the mortgage bondholders. An appeal to this court was allowed, and the following question certified for its opinion:

"Under and by virtue of the operation of the mortgage given by the Saratoga Gas and Electric Light Company, has the mortgagee, or the receiver appointed in the foreclosure action, an equitable lien, prior to the right of the receiver in the sequestration action, upon the debts and accounts due to the corporation upon sales by it of products of its plant, produced after the giving of the mortgage and before the appointment of either receiver?"

The right of the mortgagor to deal with these products and earnings as its own under the stipulations of the mortgage has already been noticed. That right, it seems to me, is entirely inconsistent with the existence of any lien upon future products or earnings by the mortgagee. The latter could not

have a lien upon such earnings or products while the mortgagor was permitted to use them for the conduct of its business and the payment of its current debts.  We think that the true construction of the instrument is this: Where a mortgage by a corporation to secure the payment of the principal and interest of its bonds, such as this is, is made, although in terms purporting to include future earnings and products, it does not, as against general creditors, operate as a lien upon such earnings until actual entry and possession under the mortgage by the mortgagee.  This results from the stipulation in the instrument that until default the mortgagor shall have the use of the earnings in the conduct of its business, and that upon default the mortgagee may go into possession, exercise the corporate franchises and appropriate the earnings to the payment of the debt secured by the mortgage.  The right of the mortgagor, in the meantime, to the use of the earnings, amounts, practically, to absolute ownership, and hence the mortgage cannot operate as a lien upon such earnings to the prejudice of the general creditors until actual entry and possession taken, and then only upon what is earned after that time.  The lien of the mortgage upon future earnings is consummated as against other creditors only by the fact of the possession of the property, and cannot have any retroactive operation, since it would then deprive the unsecured creditor of the fund, upon the faith of which he may have given credit to the mortgagor during the time when the latter was permitted to deal with and use it as his own.  The lien upon the earnings, in favor of the bondholders, attaches only upon what is earned after the time when the lien is perfected by entry and possession.  This is the construction which has been given to corporate mortgages, expressed in substantially the same terms, by the Supreme Court of the United States, by the English courts and by the highest courts of many of our sister states.  The authorities on this question are quite numerous and when examined will be found to sustain the proposition that I have stated.  It will be quite sufficient to cite some of the cases without enlarging this opinion by any

quotations from the discussion, since the decisions speak for themselves. (*Galveston Railroad* v. *Cowdrey*, 11 Wall. 459; *Gilman* v. *Ill. & Miss. Tel. Co.*, 91 U. S. 603; *American Bridge Co.* v. *Heidelbach*, 94 U. S. 798; *United States Trust Co.* v. *Wabash Western Ry. Co.*, 150 U. S. 287, 307; *Teal* v. *Walker*, 111 U. S. 242; *Dow* v. *Memphis & L. R. R. R. Co.*, 124 U. S. 652; *Sage* v. *Memphis & L. R. R. R. Co.*, 125 U. S. 361; *Freedman's Saving & Trust Co.* v. *Shepherd*, 127 U. S. 494; *Ellis* v. *Boston, Hartford & Erie R. R. Co.*, 107 Mass. 1; *Smith* v. *Eastern R. R. Co.*, 124 Mass. 154; *Holmes* v. *Turner's Falls Co.*, 142 Mass. 590; *Emerson* v. *European & N. American Ry. Co.*, 67 Me. 387; *M. V. & W. Ry. Co.* v. *United States Express Co.*, 81 Ill. 535; *De Graff* v. *Thompson*, 24 Minn. 452; *Governments, etc., Invest. Co.* v. *Manila Ry. Co.*, L. R. [Appeal Cases 1897], 81.)

I have not been able to find any case in this state, and we are referred to none, where the precise question now under consideration has been determined, but it seems to me the principle which controls the case has been decided.

In *Rochester Distilling Co.* v. *Rasey* (142 N. Y. 570) there was a controversy between the plaintiff, who claimed title to chattels under a sale by the creditor on execution, and the defendant, who claimed title to the same chattels under a chattel mortgage, which, in terms, covered the grass growing upon the premises at the time of the execution of the mortgage, and also the products of the farm thereafter to be produced. The question in that case was whether the farm products, not existing at the time of the execution of the mortgage, but coming into existence thereafter by the ordinary operations of farming, were covered by the lien of the mortgage as against the execution creditor, and it was held that they were not. The only difference between that case and the one at bar is that here the fund in controversy was realized from the collection of accounts accruing to the mortgagor from earnings subsequent to the mortgage and before the appointment of either receiver. I can see no distinction in principle so far as concerns the question of equitable priority of lien between

the future earnings of a corporation and the future products of a farm when both are described as covered by the lien of a mortgage.

There are numerous cases to be found in the books where the controversy in regard to the lien of a mortgage, like the one now under consideration, was between the parties to the instrument. These cases are scarcely applicable to the question involved in this appeal, which is one between the general creditors and the mortgage bondholders. Most of them are reviewed in the opinion of Judge Gray in the case last cited, and it is there shown that their authority is limited to controversies between the parties to the mortgage. *Argall* v. *Pitts* (78 N. Y. 239) and *Frank* v. *N. Y., L. E. & W. R. R. Co.* (122 N. Y. 197) are cases that bear somewhat on the questions now under consideration, though, perhaps, not directly.

In this case, it seems to me, that the sequestration creditor occupies the position of a plaintiff in a creditor's bill. If the receiver who represents the mortgage bondholders has the prior right to the fund in question, as the learned court below held, the practical operation and effect of the principle should not be overlooked. The foreclosure of a corporate mortgage does not necessarily mean a sale of the property in the ordinary sense. It simply means a reorganization conducted by or in behalf of the bondholders. Sometimes, but not often, the shareholders may be consulted, but it is rarely that a general creditor has any voice in the matter. The property mortgaged is generally of such a character, and the debt of such magnitude, that a public sale in the ordinary sense is seldom practicable. Whatever may be the real value of the property sold upon the foreclosure, there generally is and may always be a deficiency. If the receiver under the mortgage can go back of his appointment and appropriate earnings of the corporation accruing before his appointment and after the execution of the mortgage, in almost every case the only fund upon which the general creditor can rely for the payment of his debt may be absorbed by the bondholders, and this too although the receiver may have taken possession of or received the

benefit of property furnished at their expense, and on the faith of the current earnings.

We think that justice and equity are best promoted by limiting the right or lien of the bondholders to such earnings only as shall accrue after the mortgage trustee or the receiver shall have actually taken possession. The earnings prior to that time should in equity be awarded to the general creditor.

For these reasons we think that the orders appealed from should be reversed and those of the Special Term affirmed, with costs, and that the question certified should be answered in the negative.

All concur.

Ordered accordingly.