### In re ADAMANT PLASTER CO.

(District Court, N. D. New York. May 10, 1905.)

No. 1,792.

1. CORPORATIONS—MORTGAGES—RELEASE—CONSTRUCTION.

A manufacturing corporation owning plants at S. and H. executed a mortgage to secure bonds on its real and personal property in both places, describing it as all factories, structures, docks, appliances, and fixtures on each and all of the premises in any wise appertaining to and con-

nected with the mixing chemical and calcining plant on such premises, and every interest, property, and thing necessary or convenient for the use and enjoyment thereof. The bonds were not sold prior to the corporation's bankruptcy, but were pledged as collateral security for demand notes given by the corporation; and after a sale of the corporation's property at H., with the exception of certain personal property, consisting of furniture, etc., such personal property was removed and stored by the corporation, and the bonds were all stamped with a release of the property at H. *Held*, that such personal property could not be regarded as appliances or as property fairly appertaining to and connected with the plants on the. premises, or necessary for the use thereof, and was therefore not covered by the mortgage.

2. SAME—AFTER-ACQUIRED PROPERTY.
    Such mortgage did not cover furniture at S., nor. raw materials or manufactured products acquired after its execution, as against general creditors of the bankrupt corporation, in favor of bondholders purchasing the bonds with notice from the bankrupt's trustee.

This is an appeal from, and the review of, a decision of C. L. Stone, Esq., referee in bankruptcy, as to the title of certain personal property claimed by Marcus D. Botsford as trustee for certain secured creditors of the Adamant Plaster Company, the above-named bankrupt, as against Charles T. Blanchard, as trustee in bankruptcy of the said Adamant Plaster Company.

Newell, Chapman & Newell, for M. D. Botsford, claimant.
Gannon, Spencer & Michell, for trustee in bankruptcy.

RAY, District Judge. The bankrupt, Adamant Plaster Company, is a domestic manufacturing corporation, and was incorporated in the year 1900. April 26, 1904, a petition in bankruptcy was filed against the said corporation in the United States District Court for the Northern District of New York, and Charles T. Blanchard was appointed receiver of all its property. In August, 1904, the said corporation was duly adjudicated a bankrupt, and the said Charles T. Blanchard was duly elected trustee of the property of such corporation, and is still acting in that capacity. May 1, 1901, the said Adamant Plaster Company duly executed a mortgage upon its real estate and personal property mentioned therein in the language hereinafter quoted, in and by which one Manning C. Palmer was named as trustee. This mortgage was given to secure an issue of bonds amounting in the aggregate to the par value of $50,-000, each bond of the denomination of $500. Attached to each of the bonds were 20 coupons, for $15 each, payable at the American Exchange National Bank, Syracuse, N. Y., on the 1st day of May and the 1st day of November of each · year. This mortgage was duly recorded July 18, 1901. The bonds issued under this mortgage were not sold prior to the bankruptcy of the company, but were pledged to different parties at different times as collateral security for the payment of demand notes given by the Adamant Plaster Company. No interest was ever paid upon either the mortgage or the bonds, nor were any coupons ever presented for payment or paid. After ·the bankruptcy of the corporation and the appointment of a trustee, one Botsford, as trustee for the parties holding the bonds as collateral then to the extent of $18,500, purchased the

bonds for $10,000, free and clear of all liens, and paid that sum therefor. The circumstances are such as to show he knew all the facts. In November, 1903, $332 of interest was paid upon the notes above mentioned, and no interest was paid thereon thereafter. The mortgage covered real estate owned by the Adamant Plaster Company situated in Syracuse, N. Y., and also the real estate of said corporation located at Hastings upon Hudson, N. Y., and such mortgage also, in its granting clause, contained the following language:

"All and singular the following real and personal property and franchises and rights of the said party of the first part, viz.:" (Here follows the description of several parcels of real estate.)

Then follows the following:

"All factories, structures, docks, appliances and fixtures upon each and all of the said premises hereinbefore described in any wise appertaining to and connected with the mixing chemical and calcining plant upon such premises, and every other right, title and interest, property and thing which is necessary or convenient for the use and enjoyment thereof, and all additions and betterments thereto, whether the same be now held or shall hereafter be acquired by the party of the first part."

On the 12th day of December, 1903, the said Palmer, as trustee named in said mortgage, duly executed and delivered a release from the mortgage of the real estate at Hastings upon the Hudson, which release recited that it included the engine, boiler, main line of shafting, main building, freight elevator, and the buildings on said lands. On each of the bonds, when finally pledged, and when purchased by Botsford, trustee for certain parties, and a claimant here, was stamped the following: "This bond is not a lien upon the Hastings upon the Hudson, N. Y. property it being released. Adamant Plaster Company, by N. F. Sholes." Said Palmer never took possession or attempted to take possession of the property described in the mortgage, or of any part of it, as, by a specific clause in the mortgage, he had the right to do after default in payment of interest on such bonds.

None of the personal property in question here falls within the description of the property enumerated in the granting clause of the mortgage, and above quoted, unless it be a portion of the property stored at the Hastings plant and the office furniture. The personal property at that plant not sold with it was stored after the real estate at that place was released from the mortgage and disposed of. It is insisted that the personal property in store at the Hastings plant, if originally included in the mortgage, was released and discharged from the lien of the mortgage, if it ever was a lien, by reason of the fact that it was severed, separated, and detached from the plant and property (real estate) with which it was connected, and in connection with which it was used, and set apart and stored as personal property belonging to the Adamant Company. The personal property in question here cannot be considered as fixtures or as part of the plant at Syracuse. None of it now in dispute had or has that character. The referee finds as a fact, and this court agrees with the finding, that, if any of the property may

be considered as included within and termed "appliances," it cannot be considered fairly as "appertaining to and connected with the plants upon said premises," or as property "necessary or convenient for the use and enjoyment thereof," or as "additions or betterments thereto." The referee finds, and this court agrees with the finding, that the language of the mortgage was intended to cover appliances, fixtures, property, and plant used for manufacturing the product known as adamant, and such replacement, additions, and betterments thereof as might be thereafter made, and that the language does not include either the product manufactured or the raw materials to be manufactured by the use of the machinery and plant. The referee also finds that the words "necessary or convenient for the use and enjoyment thereof" mean the tools and appliances to be used as a part of the machinery and plant in connection with the manufacturing processes. The referee finds that these words do not include, and were not intended to include, the articles of personal property in question in this proceeding.

Nearly all of the property in question here was acquired by the bankrupt subsequent to the giving and recording of the mortgage. It is purely personal property, and was never attached to the real estate, and never in any sense or under any construction became fixtures. It is described in two schedules, A and B, attached to the affidavit of one Michell. "A" describes the property at Syracuse, and it consists of certain office furniture of the value of $325, and of certain bags and raw material to be used in the manufacture of adamant. Schedule B describes the property in store at Hastings. When the real estate and part of the personal property at Hastings were sold, the proceeds went to release the bonds issued and pledged as before mentioned.

The claim is, on the one hand, that the lien of this mortgage attached to all after-acquired property used by the Adamant Company in connection with these plants, and manufactured therein, while, on the other hand, it is contended that the mortgage never attached as a lien in behalf of these bondholders against after-acquired personal property.

When the real estate at Hastings upon the Hudson was sold, with the plant connected therewith, there was excepted from the sale the property described in Schedule B, valued at $1,300. This was thereafter stored as personal property, and held as such. It never was connected with the property or plant at Syracuse, or taken there. When the Adamant Company was adjudged a bankrupt, it owned all these bonds with the words stamped thereon: "This bond is not a lien upon the Hastings upon the Hudson, N. Y. property it being released. [Signed] Adamant Plaster Company, by N. F. Sholes." Sholes was the president of the company. Botsford, as trustee, took them with notice of that fact. True, they had been pledged to various parties before that, but no party through whom Botsford got title took or held any of such bonds, except with that notice thereon, and with full knowledge that such bonds were not a lien on the property at Hastings upon the Hudson, or any part of that property or plant. It is clear that the mortgage and

bonds had ceased to be a lien (if ever they were) on the property described in Schedule B. So far as the mortgage ever covered this property (Schedule B), it was, as a part and parcel of the property and plant at Hastings, mortgaged as such, as a whole, and by general language; and when that was sold to other parties, and these particular articles were reserved and stored, and separated and severed from the main thing of which they had formed a part, and notice was given to the subsequent purchasers of the bonds that such bonds were not a lien thereon, and such purchasers took with full notice of that fact, they are estopped from claiming a lien thereon.

The property described in Schedule A is all after-acquired property (that is, property acquired after the execution of the mortgage), unless it be the furniture. While certain corporations may give mortgages on after-acquired property, real and personal, and the lien of such mortgage will attach thereto the moment such property comes into the possession of the mortgagor, such rule as to personal property does not extend to all corporations. Railroad corporations are within the rule, but the reasons for the rule exclude from its operation such a manufacturing corporation as this. Well may the rule extend to every corporation serving the general public, and compelled so to do by its character and the nature of its business; and here we might include all common carriers, waterworks companies, electric light and telephone companies, and all quasi public and public utility corporations; but there is no more reason for extending the rule to general manufacturing and mercantile companies doing a general business than for extending it to individuals engaged in the same kind of business. In this case the reason of the rule wholly fails. Again, when Botsford, as trustee for certain creditors, took title, he took it from the trustee in bankruptcy, and took no greater title than he had—no greater title than the Adamant Company had at the time of its bankruptcy, as against its general creditors, to appropriate this after-acquired property to the payment of the particular notes for which these bonds were pledged as collateral.

Cook on Corporations (volume 3, p. 2322, § 857) says:

"A corporation mortgage may cover property which is acquired by the corporation after the mortgage is given. This is now the well-established rule. It seems to be contrary to the common law, or at least is a wide extension of common-law rules. It is due, however, to the necessity or public policy of preserving intact and holding together the whole of a railroad or system of railroads and other quasi public properties."

It will be noticed that this language confines this class of mortgages to quasi public corporations, or to that class of corporations sometimes called "public utility corporations."

The corporation here, the Adamant Plaster Company, was engaged in the manufacture of a certain article for general sale as an article of merchandise. It necessarily purchased and had on hand for purposes of manufacture certain articles such as are described in Schedule A, excepting the furniture. When manufactured, the manufactured article was to be sold, not kept for use or consumption on the premises in connection with the conduct of the business.

Taking the whole mortgage together, it is evident that it was not intended to create a lien in favor of these bondholders upon the materials on hand to be used in the manufacture of adamant. It is equally clear that it was not the purpose to mortgage the manufactured article. To so hold, and give validity to a mortgage made by a manufacturing company upon materials purchased to be manufactured, and upon the manufactured article, would deny the general creditors selling materials to the company all remedy, or at least would subordinate them entirely to the claims of the bondholders, who by taking possession would cut off the general creditors entirely. Railroad corporations and the public utility corporations referred to are not engaged in purchasing materials for manufacturing purposes and in manufacturing articles for sale. The source of revenue of such companies is not the sale of manufactured and finished products.

Again, there is a provision in this mortgage made by the Adamant Plaster Company under which the trustee named in the mortgage might have taken possession on default. Had he done so, it may be that the lien of the mortgage would have attached to this after-acquired property from the time such possession was taken, under the well-recognized principle that a mortgage upon property to come into existence or upon after-acquired property may, in equity, be regarded as an agreement to give a mortgage when the property comes into existence or when it is acquired by the mortgagor, and that equity in such cases will not require, as preliminary, an action to compel the giving of a mortgage, but will treat the agreement to give the mortgage as a mortgage, and enforce it as such. Mitchell v. Winslow, 2 Story, 630, Fed. Cas. No. 9,673. See, also, Holroyd v. Marshall, 10 H. L. Cas. 191; 5 Com. on the Law of Corporations, Thompson, § 6141. This rule, however, has no application here.

Again:

"That a mortgage may cover future-acquired property of the mortgagor, an unmistakable intention to that effect must appear from the face of the instrument." Maxwell v. Wilmington Dental Mfg. Co. (C. C.) 77 Fed. 938.

Again, the trustee, Palmer, did not take possession on default. Bankruptcy intervened, and a trustee in bankruptcy was appointed, who took possession of all this personal property. Such trustee then sold the bonds to the trustee for the bondholders, and, under all the circumstances of the case, it would be inequitable and unjust to attempt to assert a lien upon this after-acquired property of this particular nature in favor of these bondholders.

This case is within the principle enunciated in New York Security & Trust Company v. Saratoga Gas & Electric Light Company et al., 159 N. Y. 137, 53 N. E. 758, 45 L. R. A. 132. It was there held that:

"Where a mortgage by a corporation to secure the payment of the principal and interest of its bonds, such as this is, is made, although in terms purporting to include future earnings and products, it does not, as against general creditors, operate as a lien upon such earnings until actual entry and possession under the mortgage by the mortgagee. This results from the stipulation

in the instrument that until default the mortgagor shall have the use of the earnings in the conduct of its business, and that upon default the mortgagee may go into possession, exercise the corporate franchises, and appropriate the earnings to the payment of the debt secured by the mortgage. The right of the mortgagor in the meantime to the use of the earnings amounts practically to absolute ownership, and hence the mortgage cannot operate as a lien upon such earnings, to the prejudice of the general creditors, until actual entry and possession taken, and then only upon what is earned after that time. The lien of the mortgage upon future earnings is consummated, as against other creditors, only by the fact of the possession of the property, and cannot have any retroactive operation, since it would then deprive the unsecured creditor of the fund, upon the faith of which he may have given credit to the mortgagor during the time when the latter was permitted to deal with and use it as his own. The lien upon the earnings, in favor of the bondholders, attaches only upon what is earned after the time when the lien is perfected by entry and possession. This is the construction which has been given to corporate mortgages, expressed in substantially the same terms, by the Supreme Court of the United States, by the English courts, and by the highest courts of many of our sister states."

Here the trustee in bankruptcy represents the general creditors. The Adamant Plaster Company was purchasing materials to use in the manufacture of adamant, and was selling the manufactured article as its source of revenue with which to pay its help, running expenses, and for materials purchased. This class of property mentioned and described in Schedule A, aside from the furniture, answers well to the earnings in the case of gas and electric light company, as specified in New York Security & Trust Company v. Saratoga Gas & Electric Light Company, supra.

Again, it is well settled that, in mortgages purporting to cover after-acquired property, "the words of the mortgage are strictly construed, and no land or personal property is included, unless clearly within the meaning of the words of the mortgage." Cook on Corporations (5th Ed.) § 856, p. 2316. In the case now before the court the personal property claimed is not clearly within the meaning of the words of the mortgage. On this general subject, see, also, 5 Thompson's Com. on the Law of Corporations, § 6145.

These views are not at all in conflict with the general doctrine applicable to real estate, that if a person gives a deed of, or a mortgage upon, real estate which he does not at the time own, describing it with certainty, the deed or mortgage, as the case may be, if given for a valuable consideration, will take effect when the person executing the instrument becomes the owner of the land, or of any substantial interest therein. In such case there is no reason for the rule as to possession, but the holder of such a deed or of such a mortgage would take the land or acquire his lien subject, of course, to any intervening rights.

As to the furniture described in Schedule A, the proof is not clear that it formed a part of the property belonging to the Adamant Plaster Company at the time the mortgage was given. Clearly it is not a factory, a structure, a dock, an appliance, or a fixture in any wise appertaining to or connected with the plants mentioned in the mortgage. Is it property, or a thing either necessary or convenient for the use and enjoyment of the factories, structures, etc., on the premises described, or necessary or convenient for the

use and enjoyment of such premises, or of the plants on such premises? I think not, within the meaning of the mortgage. The company never intended to mortgage its tables, chairs, stools, etc., in its office, and deprive itself of the right to dispose of the same or change the same at will. Had it intended to mortgage this furniture, it would have been mentioned in more apt terms.

The order of the referee under review is affirmed.