## DEY v. BRENACK STEVEDORING CO., Inc.

### Petition of BATE.

(District Court, E. D. New York. August 11, 1922.)

Mortgages ⊕═473—Mortgagee has no lien on rents and profits of mortgaged premises prior to appointment of receiver.

Where a mortgage foreclosure suit was instituted prior to the filing of a bill by the general creditors, but the general creditors secured the appointment of a receiver prior to the appointment of a mortgage receiver, the mortgage receiver was not entitled to the rents and profits collected by the receiver for the general creditors prior to the appointment of the mortgage receiver, as mortgagee obtained no specific lien on the rents and profits of the mortgaged premises for an anticipated deficiency until the appointment of a mortgage receiver.

In Equity. Suit by Elmer E. Dey, Jr., against the Brenack Stevedoring Company, Inc. In the matter of the petition of J. Herbert Bate. On motion to overrule exceptions and confirm special master's report. Motion granted.

See, also, 272 Fed. 127.

Adelma H. Burd, of New York City, for petitioner.

Graham, McMahon, Buell & Knox, of New York City (John B. Knox, of New York City, of counsel), for receiver.

COOPER, District Judge. This is a controversy between a receiver appointed in a mortgage foreclosure action first brought and a receiver previously appointed in an equity suit subsequently brought by a general creditor for the purpose of sequestrating the assets of the corporation, over the ownership of rents of the mortgaged property collected by the equity receiver prior to the appointment of such mortgage receiver. The mortgage receiver laid claim to the rents so collected. A special master was appointed to take testimony as to the ownership of said rent, and he overruled the contention of the mortgage receiver, and recommended that the claim be dismissed. An exception was duly taken to the special master's report, and the equity receiver moves to overrule the exception and to confirm the report.

The decision depends upon the answer to the question: Is the mortgage receiver entitled to the rents and profits collected by the receiver for the general creditors prior to the appointment of such mortgage receiver, because the bill in foreclosure was filed before the filing of the bill by the general creditor? It is a general rule that the only way in which a mortgagee may obtain a specific lien upon the rents and profits of mortgaged premises, to collect a deficiency or an anticipated deficiency, is by appointment of a receiver; that he cannot call upon the owner of the equity of redemption to refund rents and profits which the latter had collected before the mortgagee attempted to get a specific lien upon such rents and profits by the appointment of a receiver. In Astor v. Turner, 11 Paige (N. Y.) 436, 437, 43 Am. Dec. 766, the doctrine was thus tersely expressed:

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"He cannot call upon the owner of the equity of redemption in the mortgaged premises, to refund rents and profits which the latter had collected or received, before the mortgagee attempted to get a specific lien upon such rents and profits, by the appointment of a receiver. See Howell v. Ripley, 10 Paige's Rep. 43."

In New York Security Co. v. Saratoga G. & El. L. Co., 159 N. Y. 137, 145, 53 N. E. 758, 760 (45 L. R. A. 132), where two receivers simultaneously appointed, one in foreclosure and the other in sequestration action, laid claim to the rent, Judge O'Brien expressed the unanimous opinion of the court in stating, that—

"If the receiver under the mortgage can go back of his appointment and appropriate earnings of the corporation accruing before his appointment and after the execution of the mortgage, in almost every case the only fund upon which the general creditor can rely for the payment of his debt may be absorbed by the bondholders, and this, too, although the receiver may have taken possession of or received the benefit of property furnished at their expense, and on the faith of the current earnings. We think that justice and equity are best promoted by limiting the right or lien of the bondholders to such earnings only as shall accrue after the mortgage trustee or the receiver shall have actually taken possession. The earnings prior to that time should * * * be awarded to the general creditors."

So, also, in Gilman v. Illinois & Mississippi Tel. Co., 91 U. S. 603, 23 L. Ed. 405, the trustee in a mortgage which covered a road with its revenues and earnings, sought to recover as against a general creditor a fund which had been earned before the trustee took possession of the mortgaged property. The terms of the deed permitted the trustee to enter into possession in case of default, and apply the income and earnings to the secured debts. It was there held that:

"It is clearly implied in these mortgages that the railroad company should hold possession and receive the earnings until the mortgagees should take possession, or the proper judicial authority should interpose. Possession draws after it the right to receive and apply the income. * * * In this condition of things, the whole fund belonged to the company, and was subject to its control. It was, therefore, liable to the creditors of the company as if the mortgages did not exist."

In American Bridge Co. v. Heidelbach, 94 U. S. 798, 24 L. Ed. 144, where there was a mortgage covering rents, issues, and profits on a bridge, and the mortgagee laid claim to earnings that had accrued before a receiver was appointed as against a judgment creditor, the rule was epitomized as follows:

"In this case, upon the default which occurred, the mortgagees had the option to take personal possession of the mortgaged premises, or to file a bill, have a receiver appointed, and possession delivered to him. In either case, the income would thereafter have been theirs. Until one of these was done, the mortgagor, as Lord Mansfield said in Chinnery v. Black, 3 Doug. 391, was 'owner to all the world, and entitled to all the profit made.' The mortgage could have no retrospective effect as to previous income and earnings."

See, to the same effect, Galveston Railway v. Cowdrey, 11 Wall. 459, 483, 20 L. Ed. 199; Freedman's Saving Co. v. Shepherd, 127 U. S. 494, 8 Sup. Ct. 1250, 32 L. Ed. 163; United States Trust Co. v. Wabash Railway Co., 150 U. S. 287, 306, 14 Sup. Ct. 86, 37 L. Ed. 1085; Central Trust Co. v. Morton Trust Co., 200 N. Y. 577, 581, 93 N. E. 975; Platt v. N. Y. Railway, 170 N. Y. 453, 455, 63 N. E.

532; Iroquois Brewing Co. v. Scarabello & Co. (Sup.) 175 N. Y. Supp. 704, 706.

The eases make it apparent that a receiver must be appointed in foreclosure before a specific lien can be enforced against the rents and profits of mortgaged property. The bringing of the action of foreclosure does not create a specific lien to the prejudice of the general creditors. Justice and equity demands that a mortgagee be vigilant, and he cannot merely file his bill and stand idly by while a general creditor has a receiver appointed to sequester the funds, and then, after having his own receiver appointed, demand that rents thereto-fore collected by the creditor's receiver be turned over to him.

The exceptions filed are overruled, and the report of the special master is affirmed. An order may be entered accordingly.