### NEW YORK TRUST CO. v. ISLAND OIL & TRANSPORT CORPORATION et al.

### Ex parte TUMULTY & GLASS.

Circuit Court of Appeals, Second Circuit. June 24, 1929.

No. 273.

Leavitt J. Hunt and Hunt, Hill & Betts, all of New York City (Robert McLeod Jackson and John J. Curtin, both of New York City, on the brief), for receivers of Gulf States Oil & Refining Co.

Carl J. Austrian and Kohlman & Austrian, all of New York City (Saul J. Lance and Francis L. Kohlman, both of New York City, on the brief), for receivers of Island Oil & Transport Corporation.

William M. Chadbourne and Chadbourne, Hunt, Jaeckel & Brown, all of New York City (Clinton De Witt Van Siclen and Alfred H. Phillips, both of New York City, on the brief), for noteholders' committee of Island Oil & Transport Corporation.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). We do not find it nec-

essary at the present time to decide most of the questions argued on the appeal, and we are content to accept arguendo the claimant's position as to the contract as a whole, whatever we might think, did the case turn upon it; that is to say, we assume that the contract was valid, because there were two distinguishable persons who were parties, and who made definite promises which were legal consideration for each other. Indeed, we might perhaps agree that this must be the legal conclusion, so far as concerns the mortgagee's interest, for the whole purpose was to add to the security of the bondholders by assuring them that the mortgaged refineries should have a plentiful supply of cheap oil. It is irrelevant whether the contract was valid in other respects, because in no event was the mortgagee concerned with its performance until he took possession.

■■ While the pledge of the contract under the mortgage gave the mortgagee the security of its obligations, it did not deprive the mortgagor of its benefits before default and entry. Had it been performed, the mortgagor would have received the stipulated deliveries, and could have used the oil in its business free of any lien or accountability. This was indeed necessary, since it had no other lawful source, so long as the seller's production answered its needs. That oil it would have refined and sold, nor would the lien attach to the proceeds. The pledge was for the mortgagee's benefit only after it had taken over the property, when it would become a profitable incident to the operation of the refineries. The profits meanwhile were like any others which might arise from the use of its property by the mortgagor, for it is the general rule that the usufruct of mortgaged property before default and possession, at least in the absence of specific pledge, remains the property of the mortgagor; (Gilman v. Illinois & M. Teleg. Co., 91 U. S. 603, 23 L. Ed. 405; American Bridge Co. v. Heidelbach, 94 U. S. 798, 24 L. Ed. 144; Freedman's Saving Co. v. Shepherd, 127 U. S. 494, 8 S. Ct. 1250, 32 L. Ed. 163; U. S. Trust Co. v. Wabash Western Ry., 150 U. S. 287, 306–308, 14 S. Ct. 86, 37 L. Ed. 1085; In re Brose, 254 F. 664 (C. C. A. 2); Chinnery v. Blackman, 3 Dougl. 391; N. Y. Security & Trust Co. v. Saratoga Gas & El. Co., 159 N. Y. 137, 53 N. E. 758, 45 L. R. A. 132; Burke v. Willard, 243 Mass. 547, 137 N. E. 744; Stewart v. Fairchild-Baldwin Co., 91 N. J. Eq. 86, 108 A. 301).

■■ The strongest position for the claimant is not in the pledge of the contract properly speaking, but rather that the oil, when delivered, would have fallen within the conveying clause of the mortgage: "Supplies and materials of every kind, now owned, or which may be at any time hereafter acquired." But this could at most apply only to such oil as might still remain in specie when the mortgagee took possession; there is no evidence of how much this would have been, had the contract been performed, and at best such proof would be extremely speculative. Now the damages recoverable under the contract represent the difference between the value of the oil and its contract price. The claimant must argue that, since the oil was not received, it must be regarded as though it were still on hand and susceptible of possession, and that the damages stand in its place. But this would ignore the patent fact that, had the contract been performed, the oil would have been refined and sold, and the proceeds been available to the mortgagor's creditors. The mortgagee cannot profit indirectly at the mortgagor's expense by the seller's default, taking the substitute when it would not have been entitled to the original. It is quite true that this was a wasting property like a lease or a patent; its enjoyment consisted in a series of installments, and no corpus remained after these were delivered. It is perhaps incorrect to assimilate it straitly to land, or a bond, or a share of stock, whose value is presumably not affected, as it throws off profits, and we should not therefore press too far those clauses which expressly gave to the mortgagor the interest and dividends upon the mortgaged securities, nor perhaps that which authorized the mortgagee to enter and collect all "revenues." The case is to be decided upon the proper intent to be imputed, given the absence of any positive pledge of the installments as delivered. The necessities of the mortgagor leave no doubt of what that intent really was. Waterman v. Mackenzie, 138 U. S. 252, 11 S. Ct. 334, 34 L. Ed. 923, is not relevant; it decided merely that, when a patent has been mortgaged, the mortgagee is a necessary party to a suit for infringement; it does not follow that the mortgagor is not entitled to intermediate profits. Nor are those cases in point which allow the mortgagee of a chattel, who has title, to sue for injuries to the res.

■ The provision that the contract shall not be "canceled or modified" without the consent of the mortgagee must be limited to such changes as affected his rights. Had the conduct of the mortgagor, excusing breaches of the seller, so modified the contract that after possession the mortgagee's rights would have been lost or injured, this clause might pro-

tanto apply, but the claimants do not demand any damages after the appointment of the mortgagor's receivers. As they have no interest in what went on earlier, we may ignore the clause.

■ We have not overlooked the mortgagor's covenant to pay the bondholders one-fifth of its net profits. That was no different from the covenant to pay interest. It is quite true that the contract was expected to be the source of the oil from which profits were to arise, but exactly the same thing is true as to interest. It is no answer in either case to say that the mortgaged property is the sole means of performance; indeed, when the mortgage covers all the mortgagor's property, this must always be the case. We are not clear whether the claimants also mean to argue that the seller's default made impossible the performance of this covenant. If so, they lay their cause pro tanto on a tort, and again it is as good as to interest as it is as to profits. If they do, the answer is, first, that it is not a wrong to the obligee to prevent performance by the obligor, unless the supposed tort-feasor does so intentionally. Robins Dry Dock v. Flint, 275 U. S. 303, 48 S. Ct. 134, 72 L. Ed. 290. But the fallacy goes deeper, because it has never been thought that such a liability can arise from the nonfeasance of a third party, whether or not he be under contract with the promisor. The buyer's breach, as mortgagor, resulted by hypothesis, not from affirmative acts of the seller, but from his failure to perform. That imposed no liability as to the mortgagee.

■ The argument may be meant to take another form, though this, too, is not clear. The buyer and seller were in fact one, the buyer being the seller's mere creature. Hence it was the seller who in fact failed to pay the interest and the profit, and for this reason it is directly liable. If this is meant, it ignores the form of the transaction, from which alone the intent can be gathered. Whether or not a real contract arose as between the parties, it was intended to be real, so far as the mortgagee's interests were concerned. If so, the seller may not be treated as promisor to the mortgagee, who must be content with whatever rights he got derivatively through the contract, treated as real, so far as it is regarded at all. Thus the seller's breaches were not breaches of any undertaking to the mortgagee, and no direct relation between them arose, because none was intended. Such rights as did exist arose because of the assignment under the mortgage, and are to be judged as in any other similar case. It follows that the claimants have no interest in their own right in any recovery under the contract, and that as to them the claim should be dismissed.

■ The only remaining question is whether the claimants may press the claim in the interest of the buyer's receivers. The contract was in form assigned to the mortgagee as a whole, and later the existing causes of action were similarly conveyed under the decree. Nevertheless the intent of the assignment was not that before default and entry the mortgagee should receive the oil and redeliver it to the mortgagor. On the contrary, the mortgagor was directly to receive it, and it was only after entry that the mortgagee was to succeed him. Thus the assignment was partial, not total, within the language of Comment (a) (3) to section 156 of the Restatement of the Law of Contracts (Am. Law Inst.). In such a case the partial assignment "is operative * * * as if the part had been a separate right," provided that, in case "the obligor has not contracted to make such a partial performance, no legal proceeding can be maintained by such an assignee against the obligor over his objection," unless all persons interested are joined. But the seller at bar did contract to make partial performance, because the contract itself specifically provided for assignment to the mortgagee, and thus contemplated different performance in succeeding periods. The separate performances were therefore the same "as if the part had been a separate right." While, as we have said, the decree conveyed all existing causes of action, unless it was meant to be limited to those only which the mortgage actually covered, it unlawfully stripped the mortgagor's creditors of their "separate right." We ought not to assume that it was so intended; therefore the claimants got no more, either by the assignment or the decree, than such rights as the mortgagee could press in his own interest. It follows that the claim should be dismissed.

Decree reversed; claim dismissed.