### NEW YORK SECURITY & TRUST CO. v. EQUITABLE MORTG. CO.

#### (Circuit Court, S. D. New York. December 13, 1894.)

**1. TRUSTS—FOLLOWING PROCEEDS OF TRUST PROPERTY.**

The E. Co. was engaged in the business of loaning money upon mortgages of real estate. The mortgages received by it were deposited with trustees, to secure debentures issued by the E. Co. in series, generally amounting to $100,000. The agreements under which the bonds were deposited provided that the amount of mortgages should at no time be less than the outstanding debentures in the series; that such mortgages should always be first charges upon real estate worth 2½ times the amount of the mortgages; that if the trustee should, at any time, deem a mortgage an insufficient security, the E. Co. should, upon demand, replace it by a sufficient one; that until default in replacing such mortgages, or in payment of principal or interest of the debentures, the E. Co. should be entitled to receive the interest, but that, in case default should be made in any manner, the trustee might sell or realize upon the mortgages. No assignments of the mortgages were placed upon the records in the counties where the lands lay, and payments of interest and principal were made by the mortgagors to the E. Co. Receivers of the E. Co. were appointed in 1893, and took possession, among other things, of about $63,000 which had been paid to the E. Co. upon mortgages included in these deposits, and not turned over by it to the trustees. *Held*, that such money should be paid over to the trustees, in preference to any claims of general creditors of the E. Co., since it belonged, not to the E. Co., but to the trustees, who might follow and reclaim it.

**2. SAME—PROTECTING TRUST PROPERTY.**

The E. Co. had paid considerable sums for taxes on lands covered by mortgages included in the said deposits, and in buying in such lands at tax sales. *Held*, that these sums should not be deducted from the moneys collected upon the mortgages, since they were paid simply in discharge of the E. Co.'s obligation to keep the mortgages first charges on the land.

This was an application by the receivers, heretofore appointed of the property of the defendant corporation, for instructions as to the disposition of certain funds in their hands.

Wm. B. Hornblower, for complainants.

Thos. G. Sherman, for receivers.

LACOMBE, Circuit Judge. Receivers of the defendant company were appointed by this court in August, 1893. The business of defendant (so far as it need now be stated) was this: It loaned money, mainly in the West, to farmers and others, upon bonds and mortgages of real estate. It borrowed money from investors upon so-called "debentures," by the terms of which it agreed to pay at a fixed date in the future, to the holders of the debentures, the principal sum therein named and interest semiannually. These debentures were issued in series, generally amounting to $100,000 in each series. To secure the payment of each series, defendant deposited with a trustee a certain stipulated amount of the bonds and mortgages aforesaid, under a deed of trust, which, among other provisions, con-

tained the following: The amount of the securities thus deposited shall at no time be less than the amount of debentures issued and remaining uncanceled. Every such security shall be a mortgage, and shall be a first charge upon real estate valued at not less than $2\frac{1}{2}$ times the amount secured. The trustee is to hold the deposited securities as a collateral security for the payment of the principal and interest due upon the debentures, and for the benefit of the holders of said debentures. Whenever the company shall surrender to the trustee a debenture regularly canceled, the trustee shall, if so requested by the company, redeliver to the company, out of the securities, for the time being deposited with the trustee, securities to an amount equal to or not exceeding that of the debentures so canceled. The company may at any time call upon the trustee to redeliver to the company any security for the time being remaining deposited with the trustee, and the trustee shall forthwith redeliver such security to the company upon the company substituting for such security another security, duly certified, in the manner provided for securities originally deposited, to be a first and valid charge or lien upon real estate of not less value than the security to be redelivered to the company as aforesaid. If the trustee shall at any time think that a security held by him is not a sufficient security for the amount expressed to be secured thereby, he may require the company to deposit with him further security of like nature, sufficient to cover the estimated deficit, and the company shall within 60 days make such deposit. Until the company shall be in default in making such deposit, or until default shall have been made by the company in the payment of any principal money or interest due on the debentures, the company shall be entitled to receive all interest due upon the mortgages for the time being deposited with the trustee. In case default shall be made in any manner, the trustee may forthwith, without any further consent on the part of the company, sell, call in, or otherwise realize any of the securities so deposited, and may take any steps by selling any property comprised in such security, either by private treaty or public auction, or by legal proceedings, or by negotiating and effecting a transfer of any such security, to realize such securities, or any of them, and shall hold the moneys arising from such realization upon trust—First, to pay all costs and expenses incident to such realization; second, upon trust for the holders of the debentures; and, thirdly, upon trust to pay the surplus, if any, of such moneys to the company. And the company undertakes to be liable for the expenses in exoneration of the proceeds of securities so realized. For the purpose of effectuating any such sale or transfer, the company shall, on the requirement of the trustee, execute all proper and necessary deeds and other instruments. This agreement was an assignment to the trustee of all the bonds and mortgages in the series, as collateral security for the debentures, with full power to collect or sell out such security in case of default; but no assignments of the original mortgages were recorded in the counties where the real estate is situated. In consequence, mortgagors who wished

to pay off their debt in whole, or to pay an installment thereof, made such payment to the officers and agents of the defendant, their mortgagee, and the only person they knew in the transaction. In this way, as the receivers report, when they took possession, the company had received about $63,000, which it had not paid over to the trustees of the respective series within which were included the mortgage securities upon which these payments were made. A small amount was also thus collected by local agents of the company after appointment of receivers, but before such agents were advised of the change. This small sum has not been paid over. The receivers have also, in some instances, themselves received payments on account of principal, but have paid over all such collections to the trustees.

The first point upon which instructions are asked for is whether the several trustees who held these mortgages thus paid in whole or in part to the company, or to the local agents, after receivers were appointed, are entitled to payment of the moneys thus collected in preference to the general creditors. Undoubtedly they are. The moneys thus collected were moneys, not of defendants, but of the trustees to whom the mortgages had been assigned, and in which defendant had only a remote equity. Money of another thus collected, and not paid over, may be followed by him, and reclaimed from the general funds of defendant, either out of the cash in its possession, if that be sufficient, or, if the money thus wrongfully detained has been in part invested in personal property held by the defendant, then out of such personal property. Receivership has not altered the situation in this respect, and, there being enough cash and unincumbered securities purchased with the trustees' money to replace the sum thus misappropriated, the receivers will pay this sum of $63,000 in preference to any claims of the general creditors. It further appears that in many instances the original mortgagors failed to pay the taxes falling due on the mortgaged property, and that thereupon the defendant corporation paid them to the proper authorities, and its receivers now hold the tax receipts therefor. Such payments amount to over $12,000. In some instances default in payment of taxes continued until, upon expiration of the statutory term of credit, the land was sold for nonpayment thereof. Upon such sales the defendant corporation bought in, and received from the proper officers, tax titles or certificates of title. The amount thus paid is $15,849. It appears that taxes were thus paid and tax titles thus purchased in cases where the property was covered by mortgages included in the very series of debenture pledges, which also included the mortgages upon which payments of principal were made as above set forth. Under these circumstances, the receivers ask for instructions as to whether or not they should deduct the amounts thus paid for taxes or for tax titles from the sum collected as principal before paying over such collections of principal to the respective trustees. They should not do so. The payments of taxes and for tax titles were not made at the request of the trustee, but voluntarily by the defendant company, and it must be assumed for

its own benefit.    The trustee was under no obligation to pay the taxes, nor even to see to it that the original mortgagors paid them. The trust agreement contemplated no such action on his part. It was for the defendant to see to it that each security pledged as collateral for debentures continued to be what the contract required it to be,—"a first charge upon real estate."    When unpaid taxes became a first charge upon the property, the trustee was entitled under the contract to return the degraded security, and require from defendant a "first-charge" security in its place, or to insist upon a deposit of further security as collateral.    The various payments of taxes made by defendant, therefore, were payments in its own behalf, to relieve it from the obligation of replacing securities, and are not proper charges in its hands against the trustee.

The several trustees, moreover, ask for the delivery to them of the tax receipts, and upon this point receivers ask for instructions. This is practically already answered.    They represent payments by defendant to protect its own interests, and should be retained by it.    They constitute the evidence by which defendant may show, whenever challenged to do so, that the several securities to which they relate are still, so far as the lien of taxes is concerned, a first charge upon the property.    They are not muniments of title.    It is the original entry on the tax books, and not the duplicate thereof, issued to the taxpayer, that discharges the tax lien.

The trustees also ask for the delivery to them of the tax titles, and of the certificates of title, and upon this point receivers ask for instructions.    That question will not now be decided, and, until it is presented more fully than it is on this application, receivers will retain such titles and certificates.

It is urged on behalf of the trustees that the pledgor of the mortgage should not be allowed to buy in a superior title, and thus destroy the value of the property he has pledged; and the clause in the trust agreement providing that, for the purpose of effectuating any sale or transfer of the pledged securities, in order to realize upon them in the event of default, the defendant company shall, on the requirement of the trustee, execute all proper and necessary deeds and other instruments, may be cited in support of the proposition that a tax title subsequently purchased should be assigned.    But there may be some equitable consideration which would deprive the trustee of any right to insist upon compliance with this clause.    For example, the trust agreement gives the trustee a most comprehensive power of sale, either "at public auction or by private treaty." But if it should appear that a trustee had arbitrarily sold all the securities pledged for a series of debentures at private sale, at a sum far below what they could at the same time have been sold for in the open market, thereby increasing the general indebtedness of defendant, and thus reducing the dividend ultimately to be paid to the general creditors, it is questionable whether a court of equity will aid him in his effort to withdraw valuable assets from the general fund.    It is manifest that this question can be answered only upon a full presentation of all the facts.

Upon payment of the sums collected as principal, the receivers will require delivery to them of any bonds and mortgages fully paid off, and will also see to it that all partial payments are indorsed on the respective bonds partially paid.