BARBER ASPHALT PAVING CO. v. FORTY-SECOND ST., M. & ST. N. AVE. RY. CO. et al.

(Circuit Court of Appeals, Second Circuit. March 28, 1910. On Rehearing, June 9, 1910.)

No. 250.

1. EVIDENCE (§ 354*)—BOOKS OF ACCOUNT—ACCOUNTS BETWEEN CONTROLLED AND CONTROLLING CORPORATIONS.

The facts that the lessee of the property of a street railroad company, which it operated as a part of a consolidated system, also owned a controlling interest in the stock of the lessor and caused its books to be kept with those of other constituent companies at a central office, do not prevent the entries in such books from being prima facie evidence against the lessor in respect to accounts between the two companies, where the books were kept in an orderly way, the transactions were usual and such as would naturally take place between the parties, and no fraud was indicated or charged.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1432–1483; Dec. Dig. § 354.*]

**2. STREET RAILROADS (§ 49*)—LEASES—DEALINGS BETWEEN CONTROLLED AND CONTROLLING CORPORATIONS—VALIDITY OF NOTES.**

Notes given by the lessor to the lessee company in settlement of advances made for improvements on its property in accordance with the provisions of the lease are also prima facie valid.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 49.*]

**3. STREET RAILROADS (§ 49*)—LEASE FOR LONG TERM—CONTRACT RIGHTS PASSING TO LESSEE.**

Under a lease for 999 years, given by a street railroad company, conveying all of its property and funds, subject to the incumbrances thereon, also all the benefits and rights arising from all or any contracts, agreements, or leases held by it, in consideration of the payment of dividends on its stock, where the lessee, in pursuance of a contract made by the lessor with another company whose line it held under lease, advanced money for the betterment and equipment of such line, for which the owner gave its note, such lessee was entitled to the same rights in said note its lessor would have had under the contract.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 49.*]

**4. STREET RAILROADS (§ 54*)—MORTGAGE—RIGHT TO USE AND INCOME OF PROPERTY.**

Under a provision of a street railroad mortgage, giving the mortgagor, until default, the right to the income from the mortgaged or pledged property, the interest on the note of a controlled company which, although made payable to the mortgage trustee, was in fact for an indebtedness to the mortgagor, and held by the trustee in pledge under the terms of the mortgage, belonged to the mortgagor or its successor in interest.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 54.*]

**5. STREET RAILROADS (§ 54*) — MORTGAGE — CONSTRUCTION — OPERATION OF PROPERTY BY RECEIVERS.**

A mortgage to secure bonds running 100 years, given by a street railroad company which owned a controlling interest in constituent companies, required the mortgagor's stock in such companies to be pledged with the mortgage trustee, and provided that the controlled companies should create no liens on their properties, and incur no indebtedness other than for current operating expenses for a period not exceeding six months, except to the mortgagor, and that all claims against the controlled companies then held or thereafter acquired by the mortgagor should be held in trust for the mortgage trustee as further security for the bonds and be assigned to it on demand. *Held* that, under such provisions, a lessee of the mortgagor, succeeding to all of its property and rights subject to the mortgage, held any indebtedness accruing to it from the controlled companies, however incurred, for operating expenses or otherwise, subject to the trust created by the mortgage, the six months provision being intended only to give that length of time for payment of such expenses by the controlled companies or by the mortgagor, its successor or assigns, but that indebtedness so incurred by them to receivers for the lessee, operating the system, was not subject to such trust.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 54.*]

**6. STREET RAILROADS (§ 58*)—RECEIVERS—RIGHT TO USE INCOME FOR OPERATING EXPENSES.**

Receivers for the lessee of a street railroad system comprising lines owned by different companies are entitled to use the income from the entire system for the purpose of operating and maintaining the same as a unitary system, notwithstanding the provisions of mortgages on the property or parts thereof.

[Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 58.*]

Appeal from the Circuit Court of the United States for the Southern District of New York.

---

Suit in equity by the Barber Asphalt Paving Company against the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway Company and others. On appeal from interlocutory decrees (175 Fed. 154) settling claims by William W. Ladd, receiver of the New York City Railway Company, Frederick W. Whitridge, receiver of the Third Avenue Railway Company, and the Central Trust Company of New York. Reversed.

Dexter, Osborn & Fleming (Matthew C. Fleming and George N. Whittlesey, of counsel), for appellant.

Bowers & Sands (John M. Bowers and Middleton S. Borland, of counsel), for appellee Barber Asphalt Paving Co.

Evarts, Choate & Sherman (Herbert J. Bickford, of counsel), for Whitridge, receiver.

Merrill & Rogers (Alfred H. Holbrook, of counsel), for receiver of Forty-Second St. Ry. Co.

Arthur H. Masten, William M. Coleman, and William M. Chadbourne, for receivers of Metropolitan St. Ry. Co.

Before WARD, Circuit Judge, and HOLT and HAND, District Judges.

WARD, Circuit Judge. When a corporation mortgages its property to secure payment of bonds not due for 100 years, it is reasonable to suppose that it will stipulate for the use of the income of the mortgaged property until default. Likewise, when it leases the mortgaged property for 999 years in consideration of a dividend on its capital stock to be paid by the lessee, it is fair to assume that the lessee will stipulate for the enjoyment of the income of the property until default. And where part of the mortgaged premises consists of a controlling interest in the stock of independent corporations whose property is not affected by the lien of the mortgage, the mortgagee will find it necessary to protect the pledged stock by covenants which will prevent its value from being impaired.

In the case under consideration we have this situation, and default having occurred in payment of rent October 13, 1907, and of interest January 1, 1908, different and inconsistent arguments are made as to the meaning of the covenants in the mortgage. In 1900 the Third Avenue Railroad Company, the mortgagor, pledged a controlling interest in the stock of the Forty-Second Street Railway Company with the Morton Trust Company, afterwards succeeded by the Central Trust Company, trustee under its mortgage to secure the payment of bonds in the year 2000. At the same time it leased all its property to the Metropolitan Street Railway Company, succeeded by the present lessee, the New York City Railway Company, for 999 years.

A settlement of accounts was made, as of April 30, 1907, whereby the Forty-Second Street Railway Company, admitting its indebtedness to the Third Avenue Railroad Company for construction and equipment in the sum of $6,491,967.44, delivered its note for that amount, with interest at 4 per cent. to avoid unnecessary circuity, to the trustee of the mortgage, and its note to the New York City Railway Company for a balance of operating indebtedness of $893,433.30 at

4 per cent. This balance was arrived at by charging the Forty-Second Street Railway Company with interest on said advances for construction amounting to $980,254.92, which appears to be entirely reasonable.

September 24, 1907, the New York City Railway Company was put into the hands of receivers, who were succeeded by the present receiver, W. W. Ladd.

January. 6, 1908, F. W. Whitridge was appointed receiver of the Third Avenue Railroad Company.

February 1, 1908, he was appointed receiver of the Forty-Second Street Railway Company.

May 26, 1908, the receivers of the City Railway Company filed a claim against the Forty-Second Street Railway Company on the above-mentioned note and for a balance of open account of $107,-830.54. This balance was arrived at by charging the Forty-Second Street Railway Company with interest from April 30, 1907, on the note given the Central Trust Company to the amount of $181,053.73.

The receiver of the Forty-Second Street Railway Company denies the validity of these claims on the ground that the New York City Railway Company was entitled to no interest at all.

The receiver of the Third Avenue Railroad Company and the Central Trust Company, as trustee, also deny their validity and contend that if valid the New York City Railway Company holds them in trust for the Central Trust Company, trustee of the mortgage of the Third Avenue Railroad Company.

The whole case has been made to turn upon this question of interest. The master and the court below have dismissed the claim of the New York City Railway Company on the ground that, not being entitled to interest, the account between it and the Forty-Second Street Railway Company, with charges for interest struck out, will show the latter to be the creditor instead of the debtor.

The court below has held that because the Forty-Second Street Railway Company was controlled by the New York City Railway Company entries in its books and its giving of notes do not constitute a prima facie case against it. This would be true if the transactions themselves were unusual or indicated fraud or imposition. But the books were kept in an orderly way, and everything that was done was consistent with the operation of all the companies as one system. It was natural and proper that the majority stockholders of the Forty-Second Street Railway Company should elect its board of directors; that the books of all the companies should be kept in the office of the New York City Railway Company; that the New York City Railway Company should make advances to the Forty-Second Street Railway Company to maintain its premises, as the lease required it to do. No error or fraud is alleged. Under these circumstances, we think notes given by the Forty-Second Street Railway Company and entries in its books do make a prima facie case against it. Moreover that company is no longer controlled by the New York City Railway Company, but is in the hands of the court, and we assume that the

receiver will faithfully discharge his duty by making any proper defense.

The Third Avenue Railroad Company, as lessor, gave to the Metropolitan Street Railway Company, lessee:

"Also all the benefits and rights arising from all or any contracts, leases or agreements which the party of the first part now has or may hereafter be entitled to; also all the lands and tenements, above described, and all easements, fixtures, personalty and property of every description of the party of the first part, which franchises, rights and property so leased and demised are subject to the various burdens and conditions by which they are held by the party of the first part."

And the habendum clause provided:

"And subject to the provisions of this agreement the said party of the first part doth also hereby grant to the party of the second part the control of the expenditure of the moneys belonging to the party of the first part at the time of the taking effect of this lease, which are in the treasury of the party of the first part, whether on deposit or otherwise, and of all rights of action for the collection of money, and also all rights of action for the enforcement of rights or privileges for the construction, maintenance or operation of a railroad which are proper or essential to such construction, maintenance or operation."

We think that these provisions made the New York City Railway Company, lessee, successor of the Metropolitan Street Railway Company, owner of the note for $6,491,967.44, subject to the lien of the mortgage. It is entitled to the interest on the note under the provision of the mortgage giving the Third Avenue Railroad Company, its successors and assigns, the income of the whole mortgaged premises until default.

"Article seventeenth. Until default shall have been made in the due and punctual payment of the principal or interest of the bonds hereby secured, or of some part thereof, or in the due and punctual performance and observance of some covenant or condition hereof obligatory upon the railroad company, and until such default shall have continued beyond the period of grace, if any, herein provided in respect thereof, the railroad company, its successors and assigns, shall be suffered and permitted to retain actual possession of all the railroads, franchises and property hereby mortgaged, except the shares of stock and bonds hereinbefore mortgaged and pledged, and to manage, operate and use the same and every part thereof, with the rights and franchises appertaining thereto, and the business thereof, and to collect, receive and take the tolls, fares, earnings, rents, issues, profits and other income thereof; but the railroad company agrees and covenants that such income, after paying the expenses of operating said railroads, the taxes and rentals thereon, and the interest lawfully due and to become due upon said existing first mortgage, shall be first applied to the payment of the interest accruing and maturing upon the bonds issued hereunder and secured hereby."

As all the interest in question has been charged in the account of the Forty-Second Street Railway Company, it must be regarded (if that circumstance is important) as having been collected and paid, except so much as constitutes a part of the debit balance expressed by the note for $893,433.30 and of the open account of $107,830.54.

Other clauses of the mortgage provided that the indebtedness of the controlled companies should not be increased, and that, if it were, the Third Avenue Railroad Company and its successors were to pay whatever amount was owed to third parties and to hold what-

ever amount was owed to it as trustee for the trustee under the Third Avenue Railroad Company's mortgage.

"Article third. The railroad company further agrees, covenants and guarantees that no indebtedness of any of said controlled companies (except the current operating debt incurred in the ordinary course of business) shall be created, and that no additional bonds or funded obligations of said companies shall be issued, and no additional mortgage or other liens shall be created upon the railroads, properties, rights, privileges or franchises of said controlled companies or any of them, unless effective provision be made that the evidences of such indebtedness and all such bonds or funded obligations and any such mortgage or lien, shall, immediately upon their creation and issue, be received and delivered by the railroad company, and pledged with the trustee, to be held by said trustee subject to all the trusts of this indenture, and with the same effect as if such delivery and pledge had been made at the date hereof and hereby, or unless in some other manner effective provision shall be made to secure and continue the priority of the lien of this mortgage. And the railroad company further agrees, covenants and guarantees that no further bonds shall be issued or reissued under said existing mortgages or any of them unless the same shall be also forthwith delivered to the trustee hereunder to be likewise held by it.

"And if any company of whose capital stock a majority is now pledged hereunder, or pursuant to this indenture, shall hereafter be pledged hereunder, shall (otherwise than as herein provided) create or suffer to be created any lien or charge upon its property or income, or create or suffer to be created any indebtedness other than indebtedness to the railroad company or for the current operating expenses of such company for a period not exceeding six months, then the railroad company will pay and discharge the same.

"All claims against controlled companies now held or hereafter acquired by the railroad company, shall be, and shall be held by the railroad company as security for the payment of the bonds hereby secured, and the railroad company shall at any time, upon the written demand of the trustee, assign such claims, or deliver the evidences thereof to the trustee."

Under these clauses of the third article of the mortgage the note and the balance of the open account constitute an indebtedness of the Forty-Second Street Railway Company to the New York City Railway Company, however incurred, which the latter was bound to hold in trust for the trustee of the Third Avenue Railroad Company's mortgage as a further security for the payment of the bonds. We are not convinced by the argument that, under the mortgage, the Third Avenue Railroad Company, its successors and assigns, can hold for its own use indebtedness of the controlled companies incurred for their current operating expenses. We think the exception as to the current operating expenses for a period of not exceeding six months was merely intended to fix a time within which such indebtedness need not be actually paid either by the controlled companies or by the mortgagor, its successors and assigns.

The receivers of the New York City Railway Company operating the system as officers of the court are not bound by the lease and so stand in a different position from the company itself. They are entitled to use the income of the mortgaged premises in operating and maintaining the same. Any indebtedness incurred to them by the Forty-Second Street Railway Company they are not bound to hold in trust for the trustee of the Third Avenue Railroad Company's mortgage. This may make proper a separation of the open account as of September 24, 1907, the date of their appointment. The decrees

of June 15 and December 29, 1909, appealed from, are reversed, with instructions to the court below to enter a decree referring the cause to the special master for further proceedings in accordance with this opinion.

HAND, District Judge. I concur in the disposition of the points raised, except that I regard as income a part of the interest to February 1, 1908, payable upon the notes for construction advances. That part is the proportion of such interest which will be borne by the shares of stock not pledged under the mortgage. I would direct the transfer of the note and open account to the trustee with directions to collect in hotchpot any dividends in distribution upon the total indebtedness of the Forty-Second Street Railway. I would further direct the trustee so to marshal the dividends received as first to retain, subject to the lien of the mortgage, enough to pay in full the principal of all construction notes of the Forty-Second Street Railway Company and thereafter to pay over to the appellant such proportion of the remainder—which would represent interest on these construction notes—as the number of shares in the Forty-Second Street Railway, not pledged under the mortgage, bears to the total stock issue outstanding. This proportion of the interest representing in my judgment true income of the mortgagor, as it must have been understood in the mortgage, the covenants, though verbally applicable, do not cover it, and it goes to the mortgagor even though uncollected. New York Security & Trust Co. v. Saratoga Gas & Electric Co., 159 N. Y. 137, 53 N. E. 758, 45 L. R. A. 132. In view of the fact that these views do not prevail with my brethren, I shall forbear giving my reasons at length.

## On Rehearing.

WARD, Circuit Judge. We decided this case on the record before us. It is a creditor's action, asking for the marshaling and distribution of the defendant's assets among its creditors, in which a receiver was appointed. The parties before the court were the Central Trust Company, trustee under the mortgage of the Third Avenue Railroad Company, the receiver of the Third Avenue Railroad Company, the receiver of the Forty-Second Street Railway Company, the defendant, and the receiver of the New York City Railway Company, the claimant. The claim under consideration is that of the New York City Railway Company against the Forty-Second Street Railway Company on a note for $893,433.30 and a balance of open account for $107,830.-54. All parties appeared and were heard; the trust company and the receivers of the Third Avenue Railroad Company and of the Forty-Second Street Railway Company combining against the claimant.

The special master dismissed the claim on the open account upon the ground that it was not entitled to any interest, and, the items of interest being deducted, the claimant became a debtor instead of a creditor of the Forty-Second Street Railway Company. He dismissed the claim on the note on the ground that the prima facie case made by the production of the note was overcome by the fact that the claimant had the stock control of the Forty-Second Street Railway Company.

On exceptions the. Circuit .Court sustained ·the master's general conclusions, but sent the case back to him so that the claimant might prove so, much of the claim represented by the note as was for "current operating debt incurred in the ordinary course of business."

Thereupon the master after a further hearing reported that no part of the note represented such debt and dismissed the claim on the merits. The Circuit Court having confirmed the report, appeal was taken from both orders to this court.

We did say in our opinion that the note for $6,491,967.44 covering advances made by the Third Avenue Railroad Company in most part before the lease, the interest on which had always been paid by the Forty-Second Street Railway Company to the lessee of the Third Avenue Railroad Company, belonged to the New York City Railway Company. That question, however, was not necessarily involved, and what we said upon the subject is not to be regarded as binding upon any one, as the parties agree that title to the note is in the Third Avenue Railroad Company.

Upon the record before us the majority of the court are still of opinion: First, that the New York City Railway Company was entitled to interest on the note for $6,491,967.44 held by the trust company, as income of the leased premises as well as by the practice and agreement of the parties. Second, that it was bound (and its receivers for it, having been called upon to do so) to account to the mortgagee for the note for $893,433.30 and for the balance of open account down to September 24, 1907, when it went into the hands of receivers, so far as it might be needed to pay the bonded debt, the same being indebtedness of a controlled company. Third, that this indebtedness was not subject to the lien of the mortgage nor mentioned in the decree of foreclosure and did not pass by the sale, although it was mentioned in the notice of sale. The right of the Central Trust Company with reference to it is to enforce the covenant contained in the mortgage as to indebtedness of the controlled companies. Fourth, that between September 24, 1907, and January 12, 1908, when the receiver of the Third Avenue Railroad Company took possession of the leased premises, the receivers of the New York City Railway Company were entitled as officers of the court to claim any balance of open account in their own right. They could not be obliged to account therefor to the mortgagee because they were not bound by the covenant of the mortgagor.

The mortgage contemplated that the Third Avenue Railroad system, the mortgaged premises, should be operated together with the Metropolitan Railway system as a single system, and they have been so operated by the Circuit Court. The first consideration in the case of public service corporations is performance of the duties due the public. For this reason the court's officers are entitled to use the whole income of the whole system, however derived, in operating and maintaining it. Barton.v. Barbour, 104 U. S. 126, 135, 26 L. Ed. 672; International Trust Co. v. Decker Bros., 152 Fed. 78, 83, 81 C. C. A. 302, 11 L. R. A. (N. S.) 152.

This complicated and confusing case was remanded for further proceedings in order that any defense not set up because of the special master's ruling as to the claimant's prima facie case might be availed of. The record is very loose, even for a dependent proceeding in an equity cause. The only thing in the nature of a pleading is the statement of claim by the receivers of the New York City Railway Company and the objection to it by the Central Trust Company. Still, the rights of the trust company in respect to the claim have with the consent of all parties been considered, and we think they may be disposed of without the necessity of another independent proceeding. If further testimony is needed for the final disposition of the cause, it can be taken before the special master.