1064

In re PRUDENCE CO., Inc.
Nos. 27496, 27028.

District Court, E. D. New York.
May 29, 1936.

Chadbourne, Stanchfield & Levy, of New York City (Horace G. Hitchcock and Charles Pickett, both of New York City, of counsel), for Manufacturers Trust Co.

Kaufman, Weitzner & Celler and Thomas Cradock Hughes, both of New York City (Emil Weitzner and Harold S. Lynton, both of New York City, of counsel), for Trustees of Prudence Co., Inc.

MOSCOWITZ, District Judge.

In June, 1932, the Prudence Company, Inc. (hereinafter referred to as the "Debtor"), sought to obtain a loan from the Reconstruction Finance Corporation. At that time the Debtor was indebted to Manufacturers Trust Company in the sum of $2,-000,000, and the latter held the Debtor's note dated November 13, 1931, payable March 14, 1932, which note was secured by a mortgage participation certificate. The Debtor was also indebted to other banks in various amounts.

In order to obtain the loan from the Reconstruction Finance Corporation, the Debtor was obliged to obtain a forbearance agreement from Manufacturers Trust Company and the other banks to whom it was indebted. By the terms of this agreement, Manufacturers Trust Company and the other banks agreed for a stated period to forbear from instituting, prosecuting, maintaining, or otherwise enforcing, on account of or in relation to the Debtor's indebtedness to them, any suit or action at law or in equity against the Debtor or any lien or right of lien or sale or other disposal of any collateral held by them. This forbearance agreement was entered into on June 17, 1932, and on the same day the Debtor paid Manufacturers Trust Company $1,-000,000 in reduction of the $2,000,000 loan, and the Debtor's note dated November 13, 1931, was canceled, and in place thereof the Debtor issued to Manufacturers Trust Company a new note dated June 7, 1932, in the sum of $1,000,000 payable on demand. By the terms of the forbearance agreement, which was incorporated by reference in the note, Manufacturers Trust Company agreed to forbear from collecting the note for three years. The period of forbearance, however, was to terminate on the happening of certain events, among which was the declaration by the Reconstruction Finance Corporation that the Debtor's obligations to it were due and payable. The latter event having occurred, the period of forbearance has expired.

The Debtor's note to Manufacturers Trust Company dated June 7, 1932, was secured by a pledge of certain described bonds and mortgages in the principal amount of $1,000,000 which were delivered to Manufacturers Trust Company and are still in its possession. The delivery of this collateral was accompanied by written assignments thereof by the Debtor to Manufacturers Trust Company. As a result of an amortization payment received on account of one of the pledged mortgages and applied by the Manufacturers Trust Company in part payment of the Debtor's note, the principal amount thereof has been reduced to $994,750.

Paragraph 8 of the aforesaid forbearance agreement provides as follows:

"It is contemplated that certain of the collateral from time to time held by the Banks as security for this Indebtedness owing to them respectively will consist of bonds and mortgages on real estate taken by the Company and by it assigned to the several banks. For the protection and preservation of the value of such collateral, it will be necessary to see to the performance on the part of the mortgagors and obligors of the covenants and agreements in such bonds and mortgages contained.

Accordingly, each of the Banks hereby appoints the Company its agent and representative to collect, receive and receipt for all such sums of money as may be or become payable upon or in respect to any bonds and mortgages so held by such Bank during the continuance of the period of forbearance herein provided for, to require and obtain evidence of the payment of taxes on premises subject to such mortgages and of the maintenance of insurance on the mortgaged premises as in such mortgages provided and otherwise for the service of such mortgages. The Company agrees that it will use its best efforts to see to the performance by the mortgagors and obligors of all and every the covenants and agreements in such bonds and mortgages contained; and that it will render to such Bank on or about the 10th day of each month a statement of all collections during the preceding month affecting the bonds and mortgages so held by such Bank and will, at the time of rendering such statement pay over the amount of such collections to such Bank and in the meantime will forthwith upon receipt by it of such collections deposit the same in an agency account in such manner that the same shall not be subject to claims by general creditors of the Company and will not permit the same to be mingled with its own funds, provided, however, that unless the Company shall be in default with respect to payment of interest pursuant to Section 5 hereof it shall be entitled and is hereby authorized to withdraw from such agency account, at the time of rendering such monthly statements, and to retain for its own use all sums of money collected by it as interest on the bonds and mortgages so held by such Bank. Such Bank shall have no obligation or duty itself to enforce or collect the bonds and mortgages so held by it or to see to the performance on the part of the obligors and/or mortgagors of the covenants and agreements therein contained or otherwise to realize thereon, or to collect, enforce or otherwise realize upon any other collateral for the Indebtedness at any time held by it; and it shall incur no liability or accountability to any person or party whatsoever for or by reason of its failure so to do."

Between June 7, 1932, and March 4, 1933, the Debtor retained for its own use all sums representing interest collected by it upon the pledged bonds and mortgages. From March 4, 1933, up to the appointment of Trustees of the Debtor pursuant to section 77B of the Bankruptcy Act (11 U.S.C.A. § 207), the Debtor remitted to Manufacturers Trust Company, as received, all moneys representing interest upon the pledged bonds and mortgages with the exception of one item of $1,000 collected by the Debtor on the day Trustees thereof were appointed. Since their appointment, the Trustees of the Debtor have collected moneys representing interest upon the pledged bonds and mortgages and have refused to turn over these moneys to Manufacturers Trust Company on demand. This motion has therefore been made to compel the Trustees to turn these moneys over to Manufacturers Trust Company.

The Trustees contend that "the unfettered dominion reserved by the Debtor over the collateral deposited by it with Manufacturers Trust Company invalidates the pledge," and that they are therefore entitled to retain the moneys representing interest upon the pledged bonds and mortgages for the benefit of the general creditors of the Debtor.

The Trustees rely on the doctrine enunciated in Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 568, 69 L.Ed. 991. In that case the Hub Carpet Company obtained a loan from Ratner and purported to assign to him all its accounts receivable. Ratner was given the right, at any time, to require that all amounts collected be applied in payment of his loan, but, until he did so, the Hub Carpet Company was not required to apply any of the collections to the reduction of his loan. The Hub Carpet Company was at liberty to use the proceeds of all accounts collected as it saw fit. It could collect the accounts as they became due and could keep the money. While lists of the accounts receivable were delivered to Ratner, the existence of the assignment was to be kept secret. In holding the assignment invalid, the Supreme Court said:

"Under the law of New York a transfer of property as security which reserves to the transferor the right to dispose of the same, or to apply the proceeds thereof, for his own uses, is, as to creditors, fraudulent in law and void. This is true whether the right of disposition for the transferor's use be reserved in the instrument or by agreement in pais, oral or written; whether the right of disposition reserved be unlimited in time or be expressly terminable by the happening of an event; whether the transfer cover all the property of the debtor or only a part; whether the right of disposi-

tion extends to all the property transferred or only to a part thereof; and whether the instrument of transfer be recorded or not.

"If this rule applies to the assignment of book accounts, the arrangement of May 23 was clearly void; and the equity in the future acquired accounts, which it would otherwise have created, did not arise. Whether the rule applies to accounts does not appear to have been passed upon by the Court of Appeals of New York. But it would seem clear that whether the collateral consist of chattels or of accounts, reservation of dominion inconsistent with the effective disposition of title must render the transaction void. Ratner asserts that the rule stated above rests upon ostensible ownership. * * * But it is not true that the rule stated above and invoked by the receiver is either based upon or delimited by the doctrine of ostensible ownership. It rests not upon seeming ownership because of possession retained, but upon a lack of ownership because of dominion reserved. It does not raise a presumption of fraud. It imputes fraud conclusively because of the reservation of dominion inconsistent with the effective disposition of title and creation of a lien. * * *

"The results which flow from reserving dominion inconsistent with the effective disposition of title must be the same whatever the nature of the property transferred. The doctrine which imputes fraud where full dominion is reserved must apply to assignments of accounts although the doctrine of ostensible ownership does not. There must also be the same distinction as to degrees of dominion. Thus, although an agreement that the assignor of accounts shall collect them and pay the proceeds to the assignee will not invalidate the assignment which it accompanies, the assignment must be deemed fraudulent in law if it is agreed that the assignor may use the proceeds as he sees fit.

"In the case at bar the arrangement for the unfettered use by the company of the proceeds of the accounts precluded the effective creation of a lien and rendered the original assignment fraudulent in law."

To determine whether the holding of Benedict v. Ratner is applicable to the pledge involved in this instant application, resort must be had to the rationale of the decision. The vice of the transaction involved therein was the reservation by the assignor of the unfettered dominion over the principal of the accounts inconsistent with the effective disposition of title and creation of a lien. Because the assignor retained or reserved such dominion over the proceeds of the accounts, there was in effect no assignment. The res was subject to diminution in value at the will of the pledgor, and the pledge therefore never achieved the intended juridical status of a pledge and was without value. A lien can only impinge and adhere to a res which is arranged to be maintained with a certain stability and which cannot be dissipated at the pledgor's discretion.

The pledge involved in this instant application does not come within the purview of the condemnation of Benedict v. Ratner, supra, as there is neither "reservation" nor "unfettered dominion." The bonds and mortgages which are the principal of the pledge were delivered to the pledgee and retained by it. The debtor had no control over them; they were entirely beyond its reach, and there was no way in which the Debtor as pledgor could diminish the value of the pledge res. It was not entitled to retain payment on account of the principal of the pledged mortgages nor did it retain or reserve any dominion over them. It is true that by the agreement of June 7, 1932, the Debtor was granted an agency, and as an incident to and contingent upon the existence and exercise of the agency the Debtor was granted a restricted and conditional right to the income from the pledged property. This limited and conditional right to the income from the pledged property is, if it may be so called, the only dominion ever enjoyed by the Debtor. However, it arose by grant and not by virtue of any reservation by the Debtor, and was incident to and contingent upon the agency in derogation of which the agent now seeks to act. In fact and in law there has been no "unfettered dominion" in the Debtor. The pledge res is clearly not one whose value the pledgor could diminish at will. If it could, then the supposed lien would be "imposed only on the rump which the borrower might leave" and would be invalid. In re M. J. Hoey & Co. (C.C.A.) 19 F.(2d) 764. The right in the pledgor to receive or retain the income from the pledge res until default does not constitute "unfettered dominion" nor render the holding of Benedict v. Ratner, supra, applicable either to the corpus or the income from the pledge res. The validity of pledges accompanied by such a reservation has been uniformly upheld by the courts, President and Directors of Manhattan Company v. Pru-

dence Company, Inc., 266 N.Y. 202, 194 N. E. 408; New York Trust Co. v. Island Oil & Transport Corporation et al. (C.C.A.) 34 F.(2d) 649; Barber Asphalt Paving Co. v. Forty-Second St., M. & St. N. Ave. Ry. Co. (C.C.A.) 180 F. 648; Sexton v. Kess-ler & Co., 225 U.S. 90, 32 S.Ct. 657, 56 L. Ed. 995; New York Security & Trust Co. v. Equitable Mortgage Co. (C.C.) 65 F. 12; In re People (Title & Mortgage Guarantee Company of Buffalo), 264 N.Y. 69, 190 N. E. 153, 96 A.L.R. 297; Prudential Insurance Company of America v. Liberdar Holding Corporation (C.C.A.) 72 F.(2d) 395; Curtis v. Leavitt, 15 N.Y. 9, and the reservation by the Debtor of the right to the income from the pledged property involved in this instant application does not invalidate the pledge.

If the defense asserted by the Trustees of the Debtor in their amended answer relative to the provisions of section 15 of the Stock Corporation Law of New York (Consol.Laws, c. 59) is relied on by said Trustees, then the issues raised thereby will be referred to a special master to hear and report.

Settle order on notice.