(139 App. Div. 617.)

LOWENFELD et al. v. EMPIRE CITY WOODWORKING CO. et al.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

1. MORTGAGES (§ 149*)—JOINT MORTGAGEES—PRIORITIES—SATISFACTION OF MORTGAGE AND TAKING OF NEW MORTGAGE BY MORTGAGEE HAVING PRIOR RIGHT—EFFECT AS AGAINST CO-MORTGAGEE.

Plaintiffs and defendant W. Co., holding junior liens on mortgaged property, accepted a joint mortgage thereon and agreed that plaintiffs' rights thereunder should be prior to those of the W. Co., that plaintiffs should receive the interest, and, after deducting the amount due them, should remit the balance to the W. Co., that plaintiffs should be authorized to accept payment and to execute satisfaction, and in the event of default to foreclose and receive the proceeds from the referee subject to the obligation to account to the W. Co.; plaintiffs being also required to notify the W. Co. of any default and foreclosure, but that they should be under no other obligation to protect the W. Co.'s interest on any suit or in any sale under any such foreclosure. Held, that the act of plaintiffs in satisfying such joint mortgage, and taking a new mortgage without the knowledge or consent of the W. Co., to reduce the liens against the property to permanent loans, and to prevent threatened foreclosure, did not amount to a conversion by a trustee of securities held for a cestui que trust, in so far as plaintiffs' obligations to the W. Co. were concerned, so as to subordinate plaintiffs' rights to those of the W. Co. in a subsequent proceeding to foreclose the mortgage executed in the place of the participation mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 303, 304; Dec. Dig. § 149.*]

2. MORTGAGES (§ 149*)—JOINT MORTGAGEES—PRIORITIES—EXPENSES OF REPLACING LOAN AND NEW MORTGAGE.

Where junior liens on real property of an insolvent held by plaintiffs and defendant W. Co. were represented by a participation mortgage, in which plaintiffs' rights were entitled to priority, and it became necessary to reduce all the claims to permanent loans in order to prevent foreclosure, in the course of which the participation mortgage was replaced by another, plaintiffs were entitled to charge the commissions and expenses incident to the replacing of the loan as against the W. Co., in foreclosure proceedings on the new mortgage.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. § 303; Dec. Dig. § 149.*]

Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by Pincus Lowenfeld and another against the Empire City Woodworking Company, impleaded with Maria Wimpie and others. From portions of a judgment of foreclosure and sale establishing priorities, plaintiffs appeal. Modified and affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and DOWLING, JJ.

Alexander Pfeiffer, for appellants.

J. Charles Weschler, for respondent.

SCOTT, J.   This is an action for the foreclosure of a mortgage, and the plaintiffs appeal from so much of the judgment as provides that the amount due to the defendant Empire City Woodworking Company be paid before any part of plaintiffs' claim (except costs) is paid.   The question raised by the appeal relates to the construction and effect to be given to what is termed a "participation agreement," whereby the plaintiffs and the woodworking company became the owners in severalty of a certain bond and mortgage for $7,870 executed to plaintiff by one Maria Wimpie.   This agreement was dated September 18, 1906, and executed by plaintiffs and the said woodworking company.   It recited the execution and delivery of the bond and mortgage, and that plaintiffs were the owners thereof to the extent of $5,300, and that the respondent was the owner of the balance of said mortgage, to wit, $2,750.   It was agreed that the ownership of plaintiffs "is and shall be in every way prior and superior to that of the party of the first part (the woodworking company) as if the parties of the second part (the plaintiffs) held a first mortgage for $5,300, and interest and the party of the first part (the woodworking company) held a second and subordinate mortgage to secure the balance of the mortgage debt."   The respective rights and obligations of the parties, as between themselves, were regulated by the second, third, and fourth articles of the agreement, which read as follows:

The "parties of the second part (meaning the plaintiffs) and the party of the first part (meaning the defendant woodworking company).   *   *   *

"(2) That the parties of the second part are authorized to receive the installments of interest due and to become due on the said bond and mortgage, and to give proper receipts therefor, and after deducting from each installment the amount thereof due under this agreement to the parties of the second part, shall remit the balance to the party of the first part.

"(3) That the parties of the second part shall have all of the rights of any holder of the said bond and mortgage and are authorized to accept payment of said bond and mortgage and to execute a satisfaction piece therefor, and in the event of any default on said bond and mortgage, to foreclose the same and receive the proceeds of sale from the referee, but the party of the first part shall in any event have the right to an acounting for all moneys received by the said parties of the second part in excess of the ownership of the parties of the second part in said bond and mortgage, and all rights and authority given hereunder by the party of the first part are irrevocable.

"(4) That the parties of the second part are to notify the party of the first part of any and every default on said bond and mortgage and of any and every foreclosure by making the party of the first part a defendant in any and every suit without further notice or demand, but the parties of the second part shall be under no other obligation to protect the interests of the party of the first part, in any such suit or upon any sale in any such foreclosure."

There are other provisions of the agreement which it is not necessary to quote.   It will be observed that this agreement, in addition to securing to plaintiffs a priority of ownership, confers upon them a large measure of control over the mortgage, and imposes upon them

certain obligations towards the defendant woodworking company. At the time this agreement was executed, Maria Wimpie, the owner of the property, was insolvent, and the property was incumbered with certain unpaid taxes, a mechanic's lien, and a number of mortgages, one held by the Mutual Life Insurance Company, one by the American Mortgage Company, and four by plaintiffs. All of these liens, the validity of none of which is disputed, were prior to the mortgage of which the defendant woodworking company was a part owner, and they aggregated, without interest, about $112,125. Soon after the execution of the participation agreement, it became necessary to provide for what are known to those engaged in building operations as "permanent loans." The charges against the property were accumulating, and the holders of the first and second mortgages, which were overdue, were threatening foreclosure. It was therefore arranged that $82,000 should be borrowed upon a first mortgage, and that plaintiffs should take a second mortgage for $47,000, being the mortgage now under foreclosure. These mortgages were executed and delivered on January 2, 1907; all previously existing liens being discharged, including the participation mortgage of $7,870. At this time there was due upon liens prior to the mortgage in which the woodworking company had an interest something over $117,748.48, in addition to which plaintiffs' interest in the $7,870 mortgage, aggregating with interest $5,392.75, was, by the terms of the participation agreement, a prior lien to the woodworking company's interest in the same mortgage. The plaintiffs, who, as the persons most largely interested, seem to have conducted the negotiation for consolidating the charges against the property, paid $2,520.50 for commissions and counsel fees incurred in procuring the permanent loan. The reasonableness of this charge is not disputed, although the respondent questions the right of plaintiffs to charge it against the proceeds of the loan. The plaintiffs next applied the proceeds of the $82,000 new first mortgage to the extinguishment of the pre-existing liens, so far as the amount would go, and took the $47,000 second mortgage in replacement of their mortgages and the participation mortgage. At this time the liens held by plaintiffs, prior to the woodworking company's interest in the participation mortgage, aggregated with interest about $82,000. A considerable part of these liens were, of course, discharged out of the proceeds of the $82,000 first mortgage; the $47,000 mortgage now under foreclosure representing the remainder of plaintiffs' liens and the respondent's interest in the participation mortgage.

The provision of the judgment appealed from proceeds upon the theory, as appears by the memorandum filed by the justice, that the act of plaintiff in satisfying the participation mortgage, and taking a new mortgage without the knowledge or consent of the woodworking company, amounted to a conversion by a trustee of securities held for a cestui que trust. Hence he awarded to the respondent what amounted to a prior lien over claims held by plaintiffs, which, before the taking of the new mortgage, had been prior to the respondent's lien. This view, as we think, resulted from a misconception of the

rights and obligations assumed by plaintiffs by the execution of the participation agreement. They did not by that agreement become trustees for the respondent. They simply agreed to pay over to respondent such proportions of any moneys collected as the latter might be entitled to, whether for interest or principal, and to notify respondent of any default in or foreclosure of the mortgage, but only in order to enable respondent to protect itself, for it is expressly stipulated that plaintiffs shall be under no obligation to protect the interests of the respondent. It is true that the participation agreement does not in terms authorize plaintiffs to satisfy the mortgage except in the event that it is paid off; but such authority is necessarily to be implied from the prior and much larger interest which plaintiffs reserved in the mortgage, and from the proviso that they shall "have all the rights of any holder of the said bond and mortgage." It was not necessary to have obtained respondent's consent, because to so hold would imply that respondent might have refused to consent.

The plaintiffs were undoubtedly bound to exercise the greatest good faith towards respondent; but they were also entitled to protect their own superior interests, and could not be required to waive those in favor of the respondent. They were therefore justified in taking the necessary steps to consolidate the liens, and, if they acted in good faith and with reasonable prudence, the respondent has no cause for complaint. Neither bad faith or lack of prudence is charged, and the respondent is therefore entitled only to be placed in as good a position relatively as it would have been if the former liens had been continued; that is to say, respondent is entitled to the payment, out of the proceeds of the sale, of the amount due under its lien, after all the superior liens are satisfied. As to the amount paid for commissions and counsel fees for procuring the permanent loan, we consider that the plaintiffs were justified in making the payments out of the proceeds of the loan. If we assume, as we must, that it was to the interest of all the lienors to place a permanent loan on the property, it was a necessary incident that certain expenses should be paid, for we "may take judicial notice that it is the ordinary and usual practice when a party makes a loan on real estate to pay out of the new loan so far as practicable the existing incumbrances on the property, whether mortgage or taxes and assessments, and also the expenses attending the loan, such as the examination of the title, brokerage, and the like." Penn. Steel Company v. Title Guaranty & Trust Company, 193 N. Y. 37, 85 N. E. 820.

We cannot find that the plaintiffs violated any duty which they had assumed to the respondent, and see no reason why the claim of the latter upon the mortgaged property should be preferred to prior claims held by the plaintiffs.

The judgment will, accordingly, be modified in accordance with the views expressed in this opinion, and, as modified, affirmed, with costs to the plaintiffs against the respondents personally. Settle order on notice.

INGRAHAM, P. J., and McLAUGHLIN and DOWLING, JJ., concur. LAUGHLIN, J., dissents.