BEAUMEL, INC., and Others, Plaintiffs, *v.* F. B. & W. REALTY
CORPORATION and Others, Defendants.

Supreme Court, Nassau County, August 24, 1934.

*Boehm & Zeiger* [*Louis Boehm, David Rasch* and *H. J. Messeloff* of counsel], for the plaintiffs.

*Isidor Mates,* for the defendants.

Lockwood, J.   The action is to foreclose the junior participating interest of $75,000 in a mortgage of $120,000, and to reform an agreement made between the plaintiff Lillian Boehm and the defendant Louis Friedman Realty Co., Inc.*

The senior interest of $45,000 in this mortgage is now owned by the Bond and Mortgage Guarantee Company by virtue of an assignment from the Title Guarantee and Trust Company, without liability on the part of the latter company.

The complaint alleges, among other things, that on January 29, 1926, the defendant F. B. & W. Realty Corporation executed and delivered to Park Beach Realty Co., Inc., a purchase-money mortgage for $120,000.   The Park Beach Realty Co., Inc., assigned this mortgage to the Title Guarantee and Trust Company for a consideration of $45,000, and an ownership agreement in the usual form was entered into setting forth that the ownership of the title company, the party of the second part, " is superior to that of the party of the first part as if the party of the second part held a first mortgage for said sum of $45,000 and interest thereon as aforesaid, and the party of the first part held a second and subordinate mortgage to secure the interest of the party of the first part in said mortgage debt."   In other words, as if the former held a first mortgage for the sum of $45,000 and the latter held a second and subordinate mortgage of $75,000.

---

* See Civ. Prac. Act, § 1079-a, added by Laws of 1934, chap. 921, in effect September 17, 1934, entitled " Commencement of action by owner of junior participating interest in mortgage."

The Park Beach Realty Company, Inc., disposed of the $75,000 subordinate participating interest in the $120,000 purchase-money mortgage, and the whole mortgage is now held as follows:

| | | |
|---|---:|---:|
| Bond and Mortgage Guarantee Company, senior participating ownership of | | $45,000 00 |
| Subordinate participating ownerships: | | |
| Plaintiff Louis Boehm | $41,576 67 | |
| Plaintiff Lillian Boehm | 1,486 10 | |
| Plaintiff Beaumel, Inc | 12,700 00 | |
| Total plaintiffs' holdings | | 55,762 77 |
| Defendant Lujoe Corporation, a Louis Friedman Realty Company, Inc., subsidiary | | 14,544 83 |
| Defendant Park Beach Realty Company, Inc., unassigned balance | | 4,692 40 |
| These six ownerships total | | $120,000 00 |

The F. B. & W. Realty Corporation, on January 29, 1926, conveyed the mortgaged premises to its affiliate, the Louis Friedman Realty Co., Inc., and that corporation, on February 10, 1930, reconveyed the premises to the F. B. & W. Realty Corporation. On March 13, 1930, the F. B. & W. Realty Corporation again conveyed the premises to the Louis Friedman Realty Co., Inc., which corporation, on June 1, 1933, conveyed the mortgaged premises to another affiliated subsidiary, the present owner, the G. L. F. Realty Co., Inc.

The G. L. F. Realty Co., Inc., has collected the rents, about $11,500 per annum, amply sufficient to pay reasonable operating expenses, taxes and mortgage interest on this new modern store building situated in the best business section of Long Beach and fully occupied by such tenants as F. W. Woolworth & Co., Star Market, drug store and shoe shop, but has failed to pay the taxes for 1932, 1933 and 1934, or any interest on said $120,000 mortgage since March 1, 1933.

The plaintiffs further allege that the G. L. F. Realty Co., Inc., owner of the equity, is a subsidiary and/or affiliated company of the defendant Louis Friedman Realty Corporation, and that the Lujoe Realty Corporation is also a subsidiary and/or affiliated company of the Louis Friedman Realty Corporation, and that Louis Friedman is the president of all three corporations, which have directors and stockholders in common.

That the G. L. F. Realty Co., Inc., and its predecessor in title, the Louis Friedman Realty Co., Inc., wrongfully and fraudulently

permitted said defaults in payment of taxes during the years 1932, 1933 and 1934, and that the Lujoe Realty Corporation, acting in concert with the said fee owners, under pretense of protecting its ownership in the junior participating share of the mortgage, paid the said taxes and the interest on the $45,000 senior mortgage held by the Bond and Mortgage Guarantee Company, and claims the right to add the amount of said taxes and mortgage interest so paid to its share. The Lujoe Realty Corporation claims these advances are prior to the rights of the plaintiffs in the junior share of the mortgage.

In March, 1934, the plaintiffs duly requested the Bond and Mortgage Guarantee Company and the rehabilitator of that company to institute an action to foreclose the mortgage and to obtain the appointment of a receiver of the rents and profits of the mortgaged premises so that the plaintiffs' investments might be protected. This request was not complied with, and on July 18, 1934, the Bond and Mortgage Guarantee Company, in rehabilitation, wrote the plaintiffs' attorney that: " The condition of this mortgage with respect to interest on the senior participation and the taxes on the property is such that there is no intention, at present, of foreclosing."

The holder of the senior interest has consented to the prosecution of this action by the plaintiffs to foreclose the junior participating share of $75,000 in said mortgage subject to the continuing lien of the senior participating share of $45,000. A receiver of the rents was appointed in this action on June 29, 1934, at which time interest from March 1, 1933, was unpaid on plaintiffs' participating mortgage holdings.

The G. L. F. Realty Co., Inc., claims that the plaintiffs may not maintain this action and cites several cases as authority for this contention.

The defendant claims that ownership agreements similar to the agreement defining the rights of the plaintiffs in this case have been construed by the courts and that the plaintiffs have no right to maintain this action, but that this right is vested solely in the owner of the senior participating share, and if in this instance the Bond and Mortgage Guarantee Company, in rehabilitation, does nothing, plaintiffs have no remedy.

In *Clare* v. *New York Life Insurance Co.* (178 App. Div. 877), relied upon by the moving party, the senior interest was $30,000 and the subordinate interest $6,000. When the mortgage matured it was extended by the owner of the senior interest. The holder of the junior interest claimed the extension was invalid and brought an action to foreclose on the theory that the holder of the senior interest

became his trustee and on its failure to foreclose at the maturity of the mortgage he had a right to do so, making the claimed trustee a defendant.

The Appellate Division granted a motion to vacate the receivership on the authority of *Lowenfeld* v. *Wimpie* (139 App. Div. 617; affd., 203 N. Y. 646).

A demurrer to the complaint was sustained at Special Term (*Clare* v. *N. Y. Life Ins. Co.*, 100 Misc. 308) on the ground that the owner of the senior interest had the exclusive right to foreclose and that the plaintiff's sole remedy was under his contract with the company. It should be noted that in that case the action was to foreclose the entire mortgage and was opposed by the owner of the senior interest, whereas in this case the action is to foreclose only the subordinate share of $75,000, subject to the continuing lien of $45,000 held by the senior participant, who consented to the institution of this action.

Furthermore, the court pointed out in the *Clare* case that " It is quite improbable that the senior participant who, in this case has an interest five times as great as the junior participant, will do anything to imperil its own interest, but even if it does, the plaintiff has an adequate remedy by suit at law for damages."

In the case under consideration the junior interest is substantially larger than the senior interest. A claim for damages against the senior participant in the *Clare* case was adequate protection to the plaintiff in that case, but the owner of the senior interest in the present case is in the hands of a rehabilitator, and any claim against it is said to be of doubtful value.

Clare had no allegation in his complaint that he would be injured or damaged in any way by the refusal of the New York Life Insurance Company to foreclose, but the plaintiffs here have pointed out a situation that will result in substantial loss to them unless they are permitted to protect themselves.

In the ownership agreement between the plaintiffs' assignor and the assignor of the Bond and Mortgage Guarantee Company, the former vested the latter with all the rights of any holder of said bond and mortgage, including the right to collect interest and to foreclose. The company was permitted to retain the interest on the share of said bond and mortgage owned by it and remit the balance to the owners of the subordinate shares. Likewise, the company was empowered to accept payment of said mortgage and was required to account to the holder of the junior interest for all money received in excess of the ownership of the company in said mortgage. The company was authorized to deduct and retain as compensation for its services one per cent commission on all sums

on account of principal received by it in excess of $45,000 and the further commission of three per cent on all sums received by it as interest on all amounts in excess of $45,000.

It was not the intention of the parties to this agreement that this sole, exclusive and compensated agency be given to the company, without the imposition of some duty upon the company to protect the substantial investment of the junior participants. (*Wood* v. *Duff-Gordon*, 222 N. Y. 88; *Matter of People* [*New York Title & Mortgage Co.*], 149 Misc. 488; affd., 241 App. Div. 807; affd., 265 N. Y. 30.)

In the *Wood* v. *Duff-Gordon Case* (*supra*) Judge CARDOZO says: " We are not to suppose that one party was to be placed at the mercy of the other  *  *  *.  His promise to pay the defendant one-half of the profits  *  *  *  was a promise to use reasonable effort to bring profits and revenues into existence."

In *Matter of People* (*New York Title & Mortgage Co.*) (*supra*) the agreement provided that the company was to continue as irrevocable agent of the guaranteed mortgage holder with the exclusive right to enforce the bond and mortgage as it (the company)· may deem necessary without interference on the part of the petitioner, until the bond and mortgage are paid.  If neither the company nor the mortgagor ever paid the bond and mortgage, the company would be permitted to retain control of petitioner's bond and mortgage forever, without ever paying interest to the latter in the interim.  Mr. Justice FRANKENTHALER said in his learned opinion in Special Term in this case: " The absurdity of this result renders it obvious that the parties to the contract of guarantee could not possibly have contemplated that the only limitation upon the duration of the company's exclusive and irrevocable agency was that contained in the words ' until the bond and mortgage are paid.' " (*Matter of Central Hanover Bank & Trust Co.*, 149 Misc. 488, 493.)

In that case the court held the company was made irrevocably the agent of the insured until the bond and mortgage are paid as long as it continued to perform the terms of the guaranty.  When they failed to perform under the guaranty the court permitted the holder of the guaranteed mortgage to cancel the agency.

It is common knowledge that prior to going into rehabilitation the mortgage companies serviced participating mortgages held under agreements similar to the one here involved.  In taking care of the fire insurance, in seeing that taxes and water rates and assessments when unpaid were called to the owner's attention and action taken if they were not paid, in sending out interest notices for interest due on the entire mortgage, and in receiving and distributing the

same, or proceeding if any part of the interest was unpaid, and in causing the property to be inspected, to pass upon applications for renewal, they were performing the service which it was expected they would perform and which they usually did perform, and which they were paid to perform under these ownership agreements. In this instance that service has completely broken down and these junior shareholders have, in effect, been told to shift for themselves and take such action as they may be advised will best protect their interests. This, in effect, constitutes an abandonment and termination of the agency. Hence this appeal to this court of equity for protection.

In *Lowenfeld* v. *Wimpie* (*supra*) the senior participant, without the consent of the junior participant, satisfied the participation mortgage as part of a plan to refinance the property. On the foreclosure of the second mortgage the junior participant's claim that its interest in the new mortgage was superior to that of the senior participant was overruled, the court holding that in the absence of bad faith or lack of prudence on the part of the senior participant, the junior participant was entitled only to be placed in as good a position relatively as it would have been if the former lien had been continued. The right of the junior participant to foreclose his share, subject to the continuing lien of the senior participant, was not involved. The court stated that the senior participant was undoubtedly bound to exercise the greatest good faith toward the junior participant, but the former was also entitled to protect its own superior interests and could not be required to waive those in favor of the latter. This controversy was between the parties to the ownership agreement. In the case under consideration the dispute is between the owner of the junior interest and the owner of the mortgaged premises.

*Corporate Investing Co.* v. *Gracehull Realty Co.* (157 App. Div. 259) holds that the senior participant has the right to maintain an action to foreclose the mortgage without the consent of the junior participant. The court there commented that inasmuch as the junior participant was a party defendant, her rights could be finally determined in the action and it was immaterial whether she be a party plaintiff or defendant.

In *Goodwin* v. *Investors & Traders Realty Co.* (210 App. Div. 38) a similar participation agreement was involved. The court there stated that it seems to be settled that the primary right to sue upon the bond or foreclose the mortgage is in the owner of the senior interest, citing the *Clare,* the *Corporate Investing Co.* and the *Lowenfeld* cases. In the *Goodwin* case the owner of the senior interest was not made a party and there was no averment in the

complaint of a demand made upon her to bring suit upon the bond and of a refusal by her to do so. Moreover, the action was at law upon the bond and there was no prayer for relief appropriate in an action in equity.

The plaintiffs allege in their complaint (¶ 40) that by the conduct of the owner of the mortgaged premises and its predecessors in title and of the parties interested in said bond and mortgage, the senior share of $45,000 and the junior share of $75,000 have been treated as, and by practical construction have become and may be deemed in equity to be, a separate first mortgage in the amount of $45,000 and interest and a separate second mortgage in the amount of $75,000 and interest.

The plaintiffs further contend that since the mortgage company went into rehabilitation it has failed to fulfill the purposes of its agency and such agency must be deemed revoked. The mortgage company has, in effect, acquiesced in such revocation by consenting to the prosecution of this action to foreclose the junior participating $75,000 share, or the second mortgage subject to the rights of the senior $45,000 or first mortgage. The parties to the ownership agreement, or their assignees may by mutual consent modify or revoke the agreement between them, and the owner of the mortgaged premises, the moving party, may not be heard to complain.

Here it is also claimed that the restrictive order of the Superintendent of Insurance restraining the companies from exercising their usual functions and activities and the rehabilitation proceedings terminated the agency at the election of the subordinate participating mortgage holders.

To decide otherwise is to approve of the scheme adopted which will lead to the destruction of the mortgage investments of these parties. This holding company, through one subsidiary, collects and pockets all the income from this well-located and fully-rented property and deliberately defaults in the payment of taxes and mortgage interest, then, through another subsidiary, uses perhaps part of the rent of this very property to pay the taxes and pay only the interest on the $45,000 senior part of the mortgage and claims said advances are prior in lien to the holdings of the other junior participants. Thus, $55,762.77 of the $120,000 mortgage, subject to which the property was purchased, would be either wiped out or frozen so hard that it would become worthless. By this plan the equity owners have nothing to lose and all to gain, and the plaintiffs, junior participating mortgage holders, have all to lose.

The mortgage crisis, with the collapse of the large mortgage guarantee and service companies, most of which are either in

rehabilitation or in receivership, or in rehabilitation, with hope of reorganization practically abandoned by those in charge, has brought about many new questions and situations to the courts. These questions are being solved in the light of present-day conditions, and, where possible, equities are being preserved by the application of rules of reason and justice. Here owners of mortgage participation shares, a lien on property yielding income sufficient to pay taxes and all mortgage interest, appeal for protection to a court of equity and urge that their investments are not only in jeopardy but are about to be destroyed. This appeal is made at a time when the Federal and the State authorities, realizing that the plight of holders of mortgages must be helped to promote economic recovery, are bending every effort to enact laws and adopt plans to aid them. Such an appeal should not go unanswered by a court of equity.

Whether or not the proof offered under these allegations would entitle the plaintiffs to the equitable relief sought by them is a matter for the trial court and may not be determined on this motion, where every material allegation of the complaint and also every fact which can fairly and legitimately be drawn therefrom must be deemed admitted. (*Dyer* v. *Broadway Central Bank*, 252 N. Y. 430; *Lamb* v. *Cheney & Son*, 227 id. 418.)

Upon a trial of this action the plaintiffs may be able to prove sufficient facts under the allegations contained in the complaint to move a court of equity to grant either the relief prayed for or such other relief as may be just and proper.

The moving party contends that the two causes of action set forth in the complaint are improperly joined. In the second cause of action it is sought to reform an agreement concerning the purchase of an indebtedness secured by an assignment of a portion of the junior interest of the bond and mortgage sought to be foreclosed in the first cause of action. The plaintiffs claim this relief is incidental to the foreclosure proceedings, as it will determine the priority of the ownership of shares in the subordinate interest in the bond and mortgage.

Both causes of action relate to the same subject, and in the foreclosure action it is necessary to determine the rights and interests of all parties both in the mortgaged premises and in the ownership of the mortgage.

The motion is denied in all respects. Submit order.