## In re PRUDENCE CO., Inc.
## In re RECONSTRUCTION FINANCE CORPORATION.
Nos. 27496, 27028.

District Court, E. D. New York.
June 4, 1936.

Root, Clark, Buckner & Ballantine, of New York City (William P. Palmer and Everett I. Willis, both of New York City, of counsel), for Reconstruction Finance Corporation.

Kaufman, Weitzner & Celler and Thomas Cradock Hughes, all of New York City (Emil Weitzner and Harold S. Lyn-

1068

ton, both of New York City, of counsel), for trustees of Prudence Co., Inc.

MOSCOWITZ, District Judge.

The Reconstruction Finance Corporation (hereinafter referred to as RFC) moves for an order directing the trustees of the debtor herein to pay over to it the sum of $77,687.35 representing the whole of the amortizations which matured, respectively, on January 1, 1933, and July 1, 1933, and part of the amortization which matured on January 1, 1934, upon a certain bond and mortgage.

Substantially all of the facts involved herein have been agreed upon in a stipulation of facts which discloses the following: In April, 1932, the RFC loaned the debtor $1,500,000. Thereafter, pursuant to a loan agreement, the loan was increased to $20,000,000 and the debtor executed its note dated June 8, 1932, in that amount to the RFC, which note is now past due and unpaid. Prior to the first loan of $1,500,000, the debtor had submitted to the RFC a loan application wherein the debtor sought to obtain a loan in an amount not to exceed $25,000,000. In so far as the terms of the application related to collateral security, the same was rejected and the collateral required was specifically designated. As to the initial loan of $1,500,000, the designated collateral was the capital stock and a note of Amalgamated Properties, Inc. As to the increased loan of $20,000,000, the designated collateral was the collateral described in the note, which included a prior interest or senior participation to the extent of $2,100,000 in a mortgage executed by 55 Central Park West Corporation to the debtor in the original amount of $2,300,000. The mortgage provided for semi-annual amortization payments on account of principal, payable $30,000 on January 1, 1932, and $30,000 semi-annually thereafter on July 1 and January 1 until July 1, 1940, the due date of the mortgage. By assignment dated April 20, 1932, the senior participation of $2,100,000 was assigned and delivered to the RFC and recorded. The debtor covenanted that there was then owing on the mortgage the principal sum of $2,270,000. The differential of $170,000 represented a junior participation then held by Amalgamated Properties, Inc., which was later assigned to the debtor. The senior and junior participations were created by an ownership agreement dated April 19, 1932, between the debtor and Amalgamated Properties,

Inc., which, among other things, provided that the rights of the respective participants should be the same as if the senior participation were a first mortgage and the junior participation a second and subordinate mortgage. It authorized the senior participant to accept payment of the mortgage either upon payment by the mortgagor or upon foreclosure, and to account to the junior participant for all amounts received in excess of the amount due on the senior participation. The mortgage and ownership agreement were delivered to the RFC at the time of the execution of the note hereinbefore referred to.

Under the terms of the note the debtor was entitled, subject to certain conditions, to collect and retain the interest on the collateral. The detail with respect to the procedure to be followed in the collection and disposition of payments representing both principal and interest was set forth in the loan agreement under which the debtor was required to deposit all such collections in a special account as trust funds, so that the same would not be subject to the claims of general creditors of the debtor. The debtor was required, on the 10th day of each month, to submit to the RFC a statement of the preceding month's collections and remit to the RFC all collections of principal, and if, at that time, the debtor was not in default, it was entitled to withdraw the interest collections from the special account and retain the same for its own use.

The trustees of the debtor contend that the parties agreed that the amortization payments on the mortgage were to be applied first to the retirement of the junior participation owned by the debtor. In support of this they rely on certain statements contained in the mortgage loan information sheet which the debtor delivered to the RFC with and in support of its application for the loan, and upon certain alleged conduct of the parties subsequent to the loan which, it is claimed, has given a practical construction to the contract. The trustees also challenge the validity of the pledge of the senior participation because of the reservation by the debtor of the right to the income from the pledge.

The RFC in support of its motion urges that the written contract unambiguously obligates the debtor to remit the amortization payments to the RFC and the intent expressed in the written contract governs, regardless of the conduct of the parties; that the amortization payments have been

traced as trust funds into the hands of the trustees; and that the provisions of the loan agreement and note with respect to the interest collected on the collateral were not such as to render the pledge invalid.

■ With respect to the question of the tracing of the trust funds into the hands of the trustees, the court is advised that the trustees do not object to the immediate payment of the same if the RFC is found to be entitled to the moneys, provided that provision is made for an undertaking of the RFC to make a refund to the debtor if, when, and to the extent that it may later be shown that the moneys paid to the RFC were held in trust by the debtor for some other person or persons. The contention of the trustees of the debtor that the provisions of the loan agreement and note with respect to interest collected on the collateral were such as to render the pledge invalid must be rejected as untenable for the reasons set forth in Matter of Prudence Company, Inc., Debtor (Application of Manufacturers Trust Company) 15 F. Supp. 1064, decided May 29, 1936. There remains for discussion only the question as to whether the agreement of pledge contemplates, and the conduct of the parties confirms, that the amortization payments on the mortgage are to be applied first to the retirement of the junior participation owned by the debtor.

The RFC contends that the documents which contain the agreement of the parties are susceptible of only one construction; that what was pledged under the note was the senior participation created by the ownership agreement; that the senior participant was entitled to the amortization payments in priority to the junior participant; and that the loan agreement and mortgage assignment vested such priority in it.

■ The note describes the RFC's pledged interest in the mortgage as a "prior interest, to the extent of $2,100,000.00." The "prior interest" so pledged was the senior participation. The description of the pledge as "prior" is without limitation, and there is no provision that any unpledged interest in the mortgage is to be prior as to principal payments. An examination of the ownership agreement which created the participations leads to the conclusion that the priority of the pledged participation included priority as to principal payments made under the mortgage. The ownership agreement provides that the

rights of the respective participants shall be the same as if the senior participation were a first mortgage and the junior participation a second and subordinate mortgage, and it authorizes the senior participant to accept payment of the mortgage and to execute a satisfaction therefor, and to account to the junior participant for all principal and interest received in excess of the ownership of the senior participant. This latter provision places no limitation on the right of the senior participant to accept payment of the principal and interest of the mortgage, except the requirement for an accounting of moneys received in excess of the amount due on the senior participation. The mortgage whose ownership was divided by the ownership agreement was payable in installments, and the provisions authorizing the senior participant to "accept payment" can only be construed as to mean acceptance of payment as it falls due under the terms of the mortgage, i. e., in installments. To hold that the words "accept payment" refer to only one of the installments, i. e., the final one, would be without warrant. In Lowenfeld & Prager v. Wimpie et al., 139 App.Div. 617, 124 N.Y.S. 178, affirmed 203 N.Y. 646, 97 N.E. 1108, an agreement containing language substantially similar to that in the ownership agreement involved herein was construed as giving the senior participant priority in every respect, and it was held that such an agreement entitled the senior participant to accept a new mortgage in full satisfaction of the existing mortgage, although the agreement did not in terms authorize such action. The authority was necessarily implied from the prior and larger interest which the senior participant had in the mortgage as well as from a proviso that the senior participant should have all the rights of any holder of the bond and mortgage.

■ Under the agreement creating the participations the senior participant was entitled to priority of payment, and the RFC, by acquiring the senior participation, is entitled to such priority unless by some provision of the contract with the debtor the RFC agreed to accept the senior participation without the right of priority which attached to it under the ownership agreement. The loan agreement provides that all principal collections made by the debtor in respect of the collateral shall be paid over to the RFC. There is no provision for an exception to this requirement as respects the senior participation which

1070

the collateral included. The assignment made an absolute transfer of the senior participation to the RFC, and it contained no provision for any change in the rights of the senior participant as defined in the ownership agreement. It is conceded that the purpose of the ownership agreement, executed the day before the assignment of the senior participation, was to create a prior interest in the mortgage which was to be assigned to the RFC. Under these circumstances, the provisions of the ownership agreement giving priority to the senior participation and the absence of any provision qualifying such priority in the assignment or the loan agreement are inconsistent with any claim that the parties intended that the debtor's junior participation should be entitled to priority of payment as against the senior participation pledged to the RFC. The fact that the purpose of the ownership agreement was to create a prior interest which could be transferred and assigned to the RFC the next day is repugnant to a supposition that the parties did not intend that this priority, created one day before the assignment, was to inure to the benefit of the assignee.

Even if the terms of the loan application as to collateral had not been expressly excluded from the contract, the statements in the information sheet as to the terms of payment of the mortgage would not affect the RFC's right to the amortization payments, and any such provision in the loan application would be inconsistent with and overcome by the provisions of the loan agreement, which expressly provided that the provisions of the loan agreement shall prevail over the provisions of the loan application in the event of any inconsistency. The information sheet does not purport to set forth the terms of the proposed agreement. It consists of representations by the debtor "submitted for the purpose of obtaining a loan" and the statement therein contained that under the terms of the mortgage amortization did not begin until January, 1935, when in fact the mortgage provided for amortization beginning in January, 1932, was an erroneous representation of fact. The representations in the loan application and information sheet, the terms of which as to collateral security were expressly rejected by the RFC, cannot affect its rights under the written contract which was thereafter executed. The trustees of the debtor urge that the conduct of the parties subsequent to the loan discloses that they regarded the junior participation as entitled to priority of payment. The conduct of parties to a contract is relevant only when the contract is ambiguous. Since the written contract between the RFC and the debtor is unambiguous, the doctrine of practical construction by conduct of the parties is inapplicable and the rights of the parties must be determined solely by the provisions of the written contract, regardless of the fact that in practice the parties may have departed from its terms. The conduct of the parties may fix a meaning to words of doubtful import, but it may not change the terms of a contract. Brainard et al. v. New York Central Railroad Company, 242 N.Y. 125, 151 N.E. 152, 45 A.L.R. 751; Hopwood Plays, Inc., v. Kemper et al., 263 N.Y. 380, 189 N.E. 461.

In view of all of the foregoing, the trustees of the debtor will be required to pay over to the RFC the sum of $77,687.35 representing the amortization payments involved in this application, upon condition that the RFC give an undertaking to make a refund to the debtor herein if, when and to the extent that it may later be shown that any part of said moneys are held in trust by the debtor for some other person or persons.

Settle order on notice in conformity with this opinion.